1 | DENNIS J. HERRERA, State Bar #139669
City Attorney
2 | MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
3 | JEREMY M. GOLDMAN, State Bar #218888
TARA M. STEELEY, State Bar #231775
4 | RENÉE E. ROSENBLIT, State Bar #304983
RYAN STEVENS, State Bar #306409
5 | Deputy City Attorneys
Fox Plaza
6 | 1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
7 | Telephone:      (415) 554-6762 [Goldman]
                      (415) 554-4655 [Steeley]
8 |                   (415) 554-3853 [Rosenblit]
                      (415) 554-3975 [Stevens]
9 | Facsimile:       (415) 554-3837
E-Mail:           Jeremy.Goldman@sfcityatty.org
10 |                 Tara.Steeley@sfcityatty.org
                    Renee.Rosenblit@sfcityatty.org
11 |                 Ryan.Stevens@sfcityatty.org

12 | Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

13 |

14 | UNITED STATES DISTRICT COURT

15 | NORTHERN DISTRICT OF CALIFORNIA

16 | PATRINA HARRISON,                              Case No. 20-cv-05178-WHA

17 |        Plaintiff,                              **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S NOTICE OF MOTION AND**

18 |        vs.                                     **MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS**

19 | CITY AND COUNTY OF SAN             **AND AUTHORITIES IN SUPPORT**
FRANCISCO,
20 |                                                Hearing Date:     October 21, 2020
        Defendant.                                 Time:             2:00 p.m.
21 |                                                Place:            Courtroom 6, 2nd Floor
                                                                     1301 Clay Street, Oakland
22 |
                                                   Trial Date:       Not Set
23 |

24 |

25 |

26 |

27 |

28 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

NOTICE OF MOTION AND MOTION ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 2

INTRODUCTION ........................................................................................................... 2

FACTUAL BACKGROUND .......................................................................................... 2

LEGAL STANDARD FOR MOTION TO DISMISS .................................................... 3

ARGUMENT ................................................................................................................... 4

    I.       PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS FAIL ................................................ 4

           A.      The Complaint Fails to State a Claim for a Violation of Due Process or an Unconstitutional Taking (First, Third, and Fourth Claims for Relief).... 4

                1.     Plaintiff Has Not Stated A Claim Under The Due Process Clause.. 4

                2.     Plaintiff Has Not Stated A Claim Under The Takings Clause ........ 5

           B.      The Complaint Fails to State a Claim for Violation of Equal Protection (Second Claim for Relief) ................................................................................ 7

           C.      Plaintiff Cannot Allege a Freestanding *Monell* Claim (Fifth Claim for Relief) ............................................................................................................... 9

    II.      PLAINTIFF'S DISABILITY CAUSES OF ACTION FAIL ............................... 10

           A.      ADA Title II (Sixth Claim for Relief) ....................................................... 10

           B.      504 Rehabilitation Act (Seventh Claim for Relief) .................................. 11

           C.      California Disabled Persons Act (Fourteenth Claim for Relief) ............... 12

    III.     PLAINTIFF'S CALIFORNIA-LAW-BASED CAUSES OF ACTION FAIL ..... 12

           A.      Nuisance (Ninth, Tenth, Fifteenth Claims for Relief) .............................. 12

           B.      Negligence (Eighth Claim for Relief) ........................................................ 13

           C.      Violation of Mandatory Duty (Eleventh Claim for Relief) ...................... 14

           D.      Violation of California Constitution Article 1, Section 1 (Twelfth Claim for Relief) ..................................................................................................... 17

           E.      Inverse Condemnation Claim (Thirteenth Claim for Relief) ................... 17

CONCLUSION ............................................................................................................... 19

Def. CCSF's Motion to Dismiss
Case No. 20-cv-05178 WHA
i
n:\lit\li2020\210069\01469349.docx

**TABLE OF AUTHORITIES**

**State Cases**

*Ann M. v. Pac. Plaza Shopping Ctr.*
   6 Cal.4th 666 (1993) ........................................................................................14

*Beaty v. Imperial Irrigation Dist.*
   186 Cal. App. 3d 897 (Ct. App. 1986)..............................................................17

*Citizens for Odor Nuisance Abatement v. City of San Diego*
   8 Cal. App. 5th 350 (2017) ..............................................................................13

*City of Los Angeles v. Superior Court*
   194 Cal. App. 4th 210 (2011) ..........................................................................18

*Clausing v. San Francisco Unified Sch. Dist.*
   221 Cal. App. 3d 1224 (1990) .........................................................................17

*Corea v. City & Cty. of San Francisco*
   2014 WL 4795051 (Cal. Ct. App. Sept. 26, 2014) ...................................15, 16

*Customer Co. v. City of Sacramento*
   10 Cal. 4th 210 (1995) .....................................................................................18

*Eastburn v. Reg. Fire Protection Authority*
   31 Cal.4th 1175 (2003) .............................................................................13, 14

*Hoff v. Vacaville Unified Sch. Dist.*
   19 Cal.4th 925 (1998) ......................................................................................14

*Lopez v. S. Cal. Rapid Transit Dist.*
   40 Cal.3d 780 (1985) .......................................................................................14

*Martinez v. Pacific Bell*
   225 Cal. App. 3d 1557 (1991) .........................................................................13

*Miller v. City of Palo Alto*
   208 Cal. 74 (1929) ...........................................................................................18

*Older v. Superior Court in & for Kern Cty*
   157 Cal. 770 (1910) .........................................................................................17

*Reid v. Google, Inc.*
   50 Cal. 4th 512 (2010) .....................................................................................14

*Union of Am. Physicians and Dentists v. Cty. of Santa Clara*
   149 Cal. App. 3d 45 (Ct. App. 1983)...............................................................15

*Urhausen v. Longs Drug Stores California, Inc.*
   155 Cal. App. 4th 254 (2007) ..........................................................................12

*Wilson v. Southern California Edison Co.*
   234 Cal. App. 4th 123 (2015) ..................................................................13

**State Statutes & Codes**

California Civil Code Section 54.1(a)(1) ....................................................12

California Code of Civil Procedure Section 1714 .......................................13

California Evidence Code Section 669 .......................................................14

California Government Code Section 17001 ..............................................15

California Government Code Section 815(a) ..........................................13, 14

California Government Code Section 815.2(a) ...........................................14

Welfare and Institutions Code Section 17000 ................................14, 15, 16

**Federal Cases**

*1075 Market Street Owners' Ass'n v. U.S. Dep't of Health & Human Servs.*
   No. 19-cv-07313-SK (N.D. Cal. Feb. 11, 2020) ......................................13

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*
   815 F.3d 1195 (9th Cir. 2016) ................................................................11

*A.J. California Mini Bus, Inc. v. Airport Comm'n of the City & Cty. of San Francisco*
   148 F. Supp. 3d 904 (N.D. Cal. 2015) ......................................................9

*Akhtar v. Mesa*
   698 F.3d 1202 (9th Cir. 2012) ..................................................................4

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).............................................................................4, 8

*Bautista v. Los Angeles Cty.*
   216 F.3d 837 (9th Cir. 2000) ....................................................................9

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*
   520 U.S. 397 (1997)..................................................................................9

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)..............................................................................3, 4

*Bennett v. City of Slidell*
   728 F.2d 762 (5th Cir. 1984) ..................................................................10

*Bronner v. San Francisco Super. Ct.*
   2010 WL 2650500 (N.D. Cal. July 1, 2010)..............................................4

*Bull v. City and Cty of San Francisco*
   595 F.3d 964 (2010)................................................................................10

*Chew v. Gates*
 27 F.3d 1432 (9th Cir.1994) ..................................................................................10

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*
 710 F.3d 946 (9th Cir. 2013) ..................................................................................4

*Collins v. City of Harker Heights, Tex.*
 503 U.S. 115 (1992).................................................................................................4

*Connick v. Thompson*
 563 U.S. 51 (2011)...................................................................................................9

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*
 489 U.S. 189 (1989)............................................................................................4, 5

*Duvall v. Cty. of Kitsap*
 260 F.3d 1124 (9th Cir. 2001) ..........................................................................10, 11

*Earll v. eBay, Inc.*
 2011 WL 3955485 (N.D. Cal. Sept. 7, 2011) .......................................................12

*F.C.C. v. Beach Commc'ns, Inc.*
 508 U.S. 307 (1993).................................................................................................7

*Foggy Bottom Ass'n v. D.C. Office of Planning*
 441 F. Supp. 2d 84 (D.D.C. 2006) .........................................................................6

*Franklin v. Murphy*
 745 F.2d 1221 (9th Cir. 1984) ................................................................................4

*Gallinger v. Becerra*
 898 F.3d 1012 (9th Cir. 2018). ...........................................................................7, 8

*Hammler v. Davis*
 2016 WL 336193 (E.D. Cal. Jan. 28, 2016) .........................................................17

*Heckler v. Chaney*
 470 U.S. 821 (1985).................................................................................................7

*Jones v. Nat'l R.R. Passenger Corp.*
 2016 WL 4538367 (N.D. Cal. Aug. 31, 2016) ......................................................11

*Lim v. City & Cty. of San Francisco*
 2010 WL 1838834 (N.D. Cal. May 4, 2010), *aff'd*, 467 F. App'x 588 (9th Cir. 2012) .............7

*Lopez v. BNSF Ry. Co.*
 WL 2030887 (E.D. Cal., July 9, 2009) ..................................................................14

*Lujan v. Defs. of Wildlife*
 504 U.S. 555 (1992)...............................................................................................16

*Mangini v. R.J. Reynolds Tobacco Co.*
  793 F. Supp. 925 (N.D. Cal. 1992) ...............................................................16

*McKenna v. Permanente Med. Grp., Inc.*
  894 F. Supp. 2d 1258 (E.D. Cal. 2012) .........................................................11

*Menotti v. City of Seattle*
  409 F.3d 1113 (9th Cir. 2005) ......................................................................10

*Mlikotin v. City of Los Angeles*
  643 F.2d 652 (9th Cir. 1981) ..........................................................................8

*Monell v. Dept of Social Service of New York*
  436 U.S. 658 (1978)..................................................................................9, 10

*Moua v. City of Chico*
  324 F. Supp. 2d 1132 (E.D. Cal. 2004) ...........................................................7

*Neitzke v. Williams*
  490 U.S. 319 (1989)..........................................................................................4

*Nicholson v. United States*
  77 Fed. Cl. 605 (2007) .....................................................................................6

*Pantoja v. Los Angeles Cty.*
  2019 WL 42800633 (C.D. Cal. Aug. 13, 2019)...............................................9

*Pauluk v. Savage*
  836 F.3d 1117 (9th Cir. 2016) .........................................................................5

*Pers. Adm'r of Massachusetts v. Feeney*
  442 U.S. 256 (1979)..........................................................................................7

*Rosenbaum v. City & Cty. of San Francisco*
  484 F.3d 1142 (9th Cir. 2007) .........................................................................8

*Roughgarden v. YottaMark, Inc.*
  2011 WL 856279 (N.D. Cal. Mar. 9, 2011)...................................................11

*Schneider v. California Dep't of Corrs.*
  151 F.3d 1194 (9th Cir. 1998) .........................................................................6

*Schroeder v. McDonald*
  55 F.3d 454 (9th Cir. 1995) .............................................................................5

*Schulz v. Bay Area Motivate, LLC*
  2020 WL 4464916 (N.D. Cal. Aug. 4, 2020) ................................................12

*Shanks v. Dressel*
  540 F.3d 1082 (9th Cir. 2008) ......................................................................4, 5

*Smith v. Rackley*
    2013 WL 394182 (E.D. Cal. Jan. 30, 2013) ............................................................8

*St. Bernard Par. Gov't v. United States*
    887 F.3d 1354 (Fed. Cir. 2018) ............................................................6

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) ............................................................9

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*
    806 F.3d 451 (9th Cir. 2015), *cert. denied sub nom*, *San Diego Unified Sch. Dist. v. T.B.*,
    136 S. Ct. 1679 (2016) ............................................................12

*Thompson v. City of Los Angeles*
    885 F.2d 1439 (9th Cir. 1989) ............................................................10

*Town of Castle Rock, Colo. v. Gonzales*
    545 U.S. 748 (2005) ............................................................5

*Trevino v. Gates*
    99 F.3d 911 (9th Cir. 1996) ............................................................10

*United States v. Padilla-Diaz*
    862 F.3d 856 (9th Cir. 2017) ............................................................7

*Valles v. Pima Cty.*
    776 F. Supp. 2d 995 (D. Ariz. 2011), *aff'd sub nom*, *Valles v. Cty. of Pima*,
    502 Fed. Appx. 651 (9th Cir. 2012) (unpublished) ............................................................6

*Wallis v. Spencer*
    202 F.3d 1126  (9th Cir.2000) ............................................................10

*Ward v. Ryan*
    623 F.3d 807 (9th Cir. 2010) ............................................................6

*Webb's Fabulous Pharms., Inc. v. Beckwith*
    449 U.S. 155 (1980) ............................................................6

*White v. Soc. Sec. Admin.*
    111 F. Supp. 3d 1041 (N.D. Cal. 2015) ............................................................9

*Wilkins-Jones v. Cty. of Alameda*
    859 F. Supp. 2d 1039 (2012) ............................................................10

**Federal Statutes**
42 U.S.C. § 1983 ............................................................4

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 3, 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on October 21, 2020 at 2:00 p.m. or as soon thereafter as this matter may be heard, before the Honorable Jon S. Tigar, United States District Court, Oakland, California, Defendants will, and hereby do, move the Court for an order dismissing Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants move to dismiss Plaintiff's complaint because Plaintiff fails to state a claim upon which relief can be granted and fails to allege facts sufficient to state a claim.

The Court should dismiss the complaint in its entirety. Defendants base their motion on this notice of motion and motion, the memorandum of points and authorities in support thereof, the declarations, papers and other evidence submitted herewith, and such argument as may be heard at the hearing on this matter.

Dated: September 9, 2020

DENNIS J. HERRERA
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
JEREMY M. GOLDMAN
TARA M. STEELEY
RENÉE E. ROSENBLIT
RYAN STEVENS
Deputy City Attorneys

By: _/s/ Ryan Stevens_
RYAN STEVENS

Attorneys for Defendant(s)
CITY AND COUNTY OF SAN FRANCISCO

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

3

4

5

6

7

In March of 2020, Mayor London Breed issued a citywide shelter in place order to combat the Covid-19 pandemic, which hit San Francisco along with the rest of the world.  Residents were ordered to shelter in place to prevent the spread of the disease.  Homeless advocacy organizations provided tents to unhoused persons in the Tenderloin neighborhood of San Francisco, while the City worked to provide hundreds of hotel rooms and safe sleeping sites.[1]

8

9

10

11

12

13

14

15

Pro per Plaintiff Patrina Harrison, who lives in an apartment in the Tenderloin, brings this case against the City and County of San Francisco alleging that homeless persons who live in tents on the sidewalk outside of her building are disruptive, set fires to their tents, and put her "in immediate threat of harm due to possible Covid-19 infection."  ECF 1, Complaint ¶ 1.  She alleges that the Mayor's shelter in place order "allows for the unhoused to shelter in tents undisturbed," and that by not relocating these individuals, the City has violated federal and state law.  *Id.* ¶¶ 4, 22-23.  Plaintiff seeks a financial award of $2.5 million and injunctive relief.  Because Plaintiff fails to state any claim upon which relief can be granted, the Court must dismiss her complaint.

16

**FACTUAL BACKGROUND**

17

18

19

20

21

22

This suit concerns homelessness in the Tenderloin neighborhood, an "approximately 50-city block neighborhood in downtown San Francisco," bordered by Van Ness Avenue, Post Street, Mason Street, and Market Street.  ECF 1 ¶ 13.  According to the complaint, the "fortunes of the Tenderloin have waxed and waned significantly over the past 60 years."  *Id.* ¶ 14.  Since the 1960s, the neighborhood has experienced a steep decline, and by 1971, "[p]rostitution and illegal drug trafficking were open and notorious and housing conditions deteriorated."  *Id.* ¶ 15.

23

24

25

26

Although housing conditions and crime have been issues in the Tenderloin for decades, Plaintiff alleges that the situation deteriorated during 2020 due to the Covid-19 pandemic.  ECF 1 ¶¶ 3, 15, 26.  According to the complaint, "[o]n March 16, 2020, in response to the COVID-19 pandemic, Mayor London Breed . . . issued a citywide shelter in place order," but the homeless have no place to

27

28

---

[1] *See, e.g.,* https://www.sfchronicle.com/bayarea/article/SF-cleans-up-Tenderloin-dramatic-65-15383753.php

shelter.  *Id.* ¶ 26.  Plaintiff alleges that the neighborhood has become a "tent containment zone for the unhoused homeless," with "tents cluttering the sidewalks where plaintiff resides, street drug sales, smoke interaction and human waste littering the sidewalks."  *Id.* ¶ 2.  Plaintiff alleges that District 6 Supervisor Matt Haney sent a letter to Mayor Breed and City officials, stating that "Tenderloin residents are 'uniquely vulnerable to the spread of Covid-19' and how the proliferation of tents on the sidewalks to the Tenderloin creates 'extreme health hazards for everyone.'"  *Id.* ¶ 28.

Plaintiff Patrina Harrison lives at 650 Eddy Street, No. 207 in San Francisco, California, in the Tenderloin neighborhood.  ECF 1 ¶ 1.  Plaintiff alleges that the tents have "menacingly intensified a dangerous and harmful situation."  *Id.* ¶ 3.  Plaintiff claims that "large populations of unhoused, groups of homeless individuals living in tents alon[g] the walls directly under the bedroom and living windows of [her] rental unit" sell drugs, "fight, urinate, vomit, [and] defecate" and these odors come into her apartment. *Id.* ¶ 1.  Plaintiff alleges that the tents catch fire "several times per week as a result of lite [sic] candles inside unattended tents, as well as from tent resid[ents] smoking cigarettes, weed, crack, and other lit, inhaled substance while sheltered inside the tents" and sometimes "deliberately" setting tents on fire during "CRACK FIGHTS" between tent neighbors.  *Id.* ¶¶ 1, 3.  Plaintiff alleges that the smoke from the fires enters her apartment, damaging her personal property, making her dizzy and short of breath, and requiring her to vacate the apartment for periods of time.  *Id.* ¶¶ 1, 3-4. Plaintiff alleges that the City has "allowed for the tents that ignited into flames under [her] bedroom and living room windows, [sic] served as the City's repository for its homeless population" creating "dire consequences for Plaintiff," including "an increased risk of hospitalization [d]ue to exposure to toxic smoke emitting from burning tents, and COVID-19 infection."  *Id.* ¶ 27.

Plaintiff seeks a financial award of $2.5 million and undefined "injunctive relief in a manner to be determined by law."  *Id.* at 33.

## LEGAL STANDARD FOR MOTION TO DISMISS

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

For purposes of dismissal, the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc*., 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Dismissal under Federal Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co*., 710 F.3d at 956.  Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228–1229 (9th Cir. 1984), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).

## ARGUMENT

I.   **PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS FAIL**

A.   **The Complaint Fails to State a Claim for a Violation of Due Process or an Unconstitutional Taking (First, Third, and Fourth Claims for Relief)**

1.   **Plaintiff Has Not Stated A Claim Under The Due Process Clause.**

Plaintiff's claim for violation of the Due Process Clause is based on her contention that the City has "abandon[ed] its duties under the law to ensure safe and secure living conditions inside and the immediate outside of plaintiff's [sic] under the living room and bedroom windows of plaintiff's rental apartment in the Tenderloin."  ECF 1 ¶ 35.  Plaintiff alleges that the sidewalk conditions deny her liberty and the use of her rental property.  *Id*.  This claim fails because the substantive prong of the Due Process Clause does not impose an affirmative duty on the government to protect life, liberty, or property.  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127-29 (1992); *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008); *Bronner v. San Francisco Super. Ct.*, No. C 09-5001 SI, 2010 WL 2650500, at *3-4 (N.D. Cal. July 1, 2010).  And because there is no protected interest, Plaintiff cannot state a procedural due process claim in this context either.  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 761-62,

766-68 (2005); *Shanks*, 540 F.3d at 1090-92; *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995) ("A due process claim is cognizable only if there is a recognized liberty or property interest at stake.").

Plaintiff also cannot rely on the "state-created danger" doctrine to state a due process claim. Such a claim requires affirmative conduct on the part of the government that places the plaintiff in danger. *DeShaney*, 489 U.S. at 201. Moreover, the plaintiff "must show not only that the defendant acted 'affirmatively,' but also that the affirmative conduct placed him in a 'worse position than that in which he would have been had [the state] not acted at all.'" *Pauluk v. Savage*, 836 F.3d 1117, 1124 (9th Cir. 2016). The complaint refers only to unspecified "acts and omissions." ECF 1 ¶ 40. "Omissions" are necessarily insufficient, because they are not affirmative acts. But the complaint does not identify any affirmative acts as the cause of the alleged harms; it alleges that the "police refused to relocate the tents citing the COVID-19 Health Order on the unhoused and shelter-in-place in tents," and that the City has not yet conducted "widescale testing for people living in tents on the streets." *Id.* ¶ 23. These are alleged failures to act, not affirmative acts. And, as the complaint itself alleges, the "influx of the homeless population underneath plaintiff's windows" is a result of the COVID-19 crisis – not actions by the City. *Id.* ¶ 23.

## 2.     Plaintiff Has Not Stated A Claim Under The Takings Clause

Plaintiff's takings claim also fails for the same reasons as her due process claim. Plaintiff alleges that the "actions by the City" have "limited, damaged, and/or burdened the property owners so substantially that they rise to the level of a regulatory taking." ECF 1 ¶ 44. Plaintiff's claim fails, however, because a takings claim can only be based on affirmative acts by the government – not the failure to act Plaintiff alleges here. In addition, to the extent Plaintiff is alleging that the City should do more to enforce drug laws and prevent homeless persons from camping on the sidewalks, her claim fails because she does not have a constitutionally protected property interest that has been "taken" by the City.

Plaintiff's claim fails because the complaint does not identify any affirmative acts by the City that amount to a "taking" of Plaintiff's property. The Takings Clause provides that "private property" shall not "be taken for public use, without just compensation." *U.S. Const. Amend. V; Webb's*

*Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 160 (1980).  As with the due process claim, a takings claim requires affirmative acts by the government; it cannot be based a failure to act.  *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1360–61 (Fed. Cir. 2018); *see also Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1341–42 (Fed. Cir. 2018) ("The principle that government inaction cannot be a basis for takings liability is equally relevant in the regulatory-takings context."); *Nicholson v. United States*, 77 Fed. Cl. 605, 620 (2007) ("In no case that we know of has a governmental agency's failure to act or to perform its duties correctly been ruled a taking.").  Plaintiff does not allege that affirmative actions by the City have burdened her property interests.  Rather, Plaintiff complains that homeless persons have set fire to their tents on the sidewalk, causing smoke to waft into her apartment, and the City has not forced the homeless persons to relocate.  She also complains more generally that homeless persons have reduced the quality of life in the Tenderloin neighborhood, and that the City has not done enough to protect her interests.  But those alleged omissions by the City are not actionable under the Takings Clause.  *Valles v. Pima Cty.*, 776 F. Supp. 2d 995, 1003 (D. Ariz. 2011), *aff'd sub nom*, *Valles v. Cty. of Pima*, 502 Fed. Appx. 651 (9th Cir. 2012) (unpublished) (holding taking claims require "affirmative, overt" action by the government, and cannot be based on government "inaction or omissions").  The Takings Clause prevents the government from taking private property without just compensation; it does not require the City to shield Plaintiff from the challenges of urban life during a global pandemic.

In addition, to the extent Plaintiff's claims are premised on the existence of tents on the sidewalk, she fails to identify a property interest.  A plaintiff must first demonstrate that she has a "property interest that is constitutionally protected" before it can state a claim under the Takings Clause.  *Ward v. Ryan*, 623 F.3d 807, 810 (9th Cir. 2010); *Schneider v. California Dep't of Corrs.*, 151 F.3d 1194, 1198 (9th Cir. 1998).  "Only if [the plaintiff] does indeed possess such an interest will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment."  *Schneider*, 151 F.3d at 1198.  Here, Plaintiff suggests that the City should do more to enforce drug laws and prevent homeless persons from camping on the sidewalks, but Plaintiff does not have a property interest in the City's enforcement choices.  *See Foggy Bottom Ass'n v. D.C. Office of Planning*, 441 F. Supp. 2d 84, 88-90 (D.D.C. 2006) (rejecting Takings

Clause claim based on allegations that the city's failure to enforce zoning requirements "reduced plaintiff's property value and dramatically limited plaintiff's ability to utilize its property for its intended purpose" because the plaintiff did not have property interest in enforcement of the zoning requirements).  To the contrary, government officials are given broad discretion in determining how and whether to enforce anti-camping and other laws.  *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (explaining that a "decision not to prosecute or enforce, whether civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

**B.    The Complaint Fails to State a Claim for Violation of Equal Protection (Second Claim for Relief)**

"A plaintiff alleging an equal protection violation must set forth facts that, if true, would plausibly establish that: (1) the 'defendants treated [plaintiff] differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the [ ] defendants acted with a discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification.'"  *Lim v. City & Cty. of San Francisco*, No. C 09-5083 CRB, 2010 WL 1838834, at *4 (N.D. Cal. May 4, 2010), *aff'd*, 467 F. App'x 588 (9th Cir. 2012) (quoting *Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1137 (E.D. Cal. 2004)).  The third element requires the plaintiff to establish "that the decisionmaker … selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.  *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).  Where, as here, the challenged conduct does not discriminate against a protected class or impinge on fundamental rights, the plaintiff must show that it is not rationally related to any legitimate governmental objective.  *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018).  A conclusory allegation that the claimed differential treatment is arbitrary or irrational is inadequate; rather, the burden is on the plaintiff to negate "every conceivable basis" that could legitimately support it.  *United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017).

The complaint does not adequately allege *any* of the elements of an equal protection claim. Plaintiff contends that the City, by "enforcing the law in some areas and declining to enforce the law in others, has arbitrarily determined where homeless encampments may or may not be located and

what communities should be affected, without following its own procedures in violation of both state and federal law." ECF 1 ¶ 38.  As a threshold matter, the complaint does not allege what "law" San Francisco putatively enforces in "some areas" of the City that it does not enforce in the Tenderloin neighborhood, nor does it allege any supporting facts that would establish such differential enforcement.  A vague, conclusory allegation like this would warrant dismissal of the claim even if it were not otherwise infirm.  *See, e.g.*, *Smith v. Rackley*, No. 2:12-CV-2478 MCE CKD P., 2013 WL 394182, at *2 (E.D. Cal. Jan. 30, 2013) (vague and conclusory allegation that "Board failed to apply to petitioner '[t]he same laws that apply to everyone else'" did not state equal protection claim).

But the Equal Protection Clause does not require cities to ensure that problems are distributed equally among their neighborhoods and that no neighborhood bears a "disproportionate burden."  ECF 1 ¶ 38.  There is no major city in the United States in which homelessness is the same in every neighborhood, and given the complexity of these issues and the great many ways in which neighborhoods can differ from one another, it is implausible and unreasonable on its face to posit that concentrations occur in particular places because the local government "declin[es] to enforce the law" there.  ECF 1 ¶ 38; *see Iqbal*, 556 U.S. at 679 (reviewing court must draw on its "experience and common sense").  The complaint does not contain allegations that would plausibly establish that the City treats similarly situated persons differently or that the alleged injury was the result of the claimed differential treatment.

Moreover, a claim that a city has disadvantaged a particular neighborhood by failing to provide municipal services in a fair or equal manner does not establish either an impermissible classification or discriminatory intent.  *Mlikotin v. City of Los Angeles*, 643 F.2d 652, 653 (9th Cir. 1981).  To the contrary, Plaintiff's contention that the City "arbitrarily determined where homeless camps may or may not be located," ECF 1 ¶ 38, undermines any suggestion of a discriminatory purpose.  *Gallinger*, 898 F.3d at 1021 ("Accommodating one interest group is not equivalent to intentionally harming another."); *see also Rosenbaum v. City & Cty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007); *Pantoja v. Los Angeles Cty.*, No. CV 19-2132 JFW (SS), 2019 WL 4280063, at *11 (C.D. Cal. Aug. 13, 2019), *report and recommendation adopted*, No. CV 19-2132 JFW (SS), 2019 WL 4276633 (C.D.

Cal. Sept. 10, 2019) ("Plaintiff fails to allege facts showing that any of the Defendants acted out of any bias at all.").

Plaintiff's rhetoric aside, there are legitimate reasons a municipality could decide not to try to force people experiencing homelessness to move from one neighborhood to another, particularly during a pandemic.  Doing so could make the provision of social services more difficult and resource-intensive; it could disrupt informal support networks among unsheltered people currently living in the same area; it could risk promoting the spread of the virus; and it could be considered an inefficient use of public funds given that it affords no benefit to the people who are forced to move, and they could simply return to the same neighborhood shortly afterwards.  Accordingly, Plaintiff's equal protection claim fails for this reason as well.  *See A.J. California Mini Bus, Inc. v. Airport Comm'n of the City & Cty. of San Francisco*, 148 F. Supp. 3d 904, 919 (N.D. Cal. 2015) (plaintiff "alleged only its economic disadvantage and did not negate the conceivable bases to support the zone system.").

### C.    Plaintiff Cannot Allege a Freestanding *Monell* Claim (Fifth Claim for Relief)

Plaintiff's fifth claim for relief is a catchall assertion that the City "engaged in the unconstitutional acts and omissions set forth above, all pursuant to policy, procedure, or customs held by the City."  ECF 1 ¶ 48.  But all of Plaintiff's constitutional claims are brought against the City directly, and there can be no liability on any of them in the absence of a municipal policy or custom under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978).  *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Each claim for relief must be complete in and of itself.  *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000).  While the fifth claim for relief telegraphs that Plaintiff's other claims under Section 1983 are inadequately pleaded, it advances no claim that is legally distinct from any of the preceding constitutional claims and is subject to dismissal for that reason.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (duplicative claim properly dismissed); *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015) (dismissing duplicative claim).

Moreover, since it consists entirely of conclusory assertions with no supporting factual allegations, it cannot supply elements that are missing from Plaintiff's other constitutional claims.  To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city itself and

show that the particular injury was incurred because of the execution of that policy.  Plaintiff must, of course, prove that his injury was caused by city policy."  *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).  A plaintiff must allege there is a "direct causal link" between the policy and the deprivation of plaintiff's constitutional rights.  *Wallis v. Spencer*, 202 F.3d 1126, 1143 (9th Cir. 2000). City policy "causes" an injury where it is the "moving force" behind the constitutional violation." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

 *Monell* requires that the moving force behind Plaintiff's injuries be "a longstanding [unconstitutional] practice or custom which constitutes *the standard operating procedure* of the local governmental entity."  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (emphasis added).  Only if a plaintiff shows that her injury resulted from a "'permanent and well-settled' practice may liability attach for injury resulting from custom."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989), *overruled on other grounds by Bull v. City and Cty of San Francisco*, 595 F.3d 964 (2010).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Thompson v. City of Los Angeles*, 885 F.2d at 1443-44.

 Plaintiff's fifth claim for relief does not supply any supporting factual allegations to establish these elements of *Monell* liability, and accordingly Plaintiff's constitutional claims should be dismissed for this reason as well.

## II. PLAINTIFF'S DISABILITY CAUSES OF ACTION FAIL

### A. ADA Title II (Sixth Claim for Relief)

 "An ADA violation is established where a plaintiff proves that: '(1) [s]he is a 'qualified individual with a disability'; (2) [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [her] disability.'" *Wilkins-Jones v. Cty. of Alameda*, 859 F. Supp. 2d 1039, 1044 (2012) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

Plaintiff's allegations are insufficient to support a claim under the ADA. Plaintiff fails to adequately allege she has a disability, as Plaintiff does not identify any disability that she suffers from and only makes conclusory allegations that she is disabled. *See Jones v. Nat'l R.R. Passenger Corp.*, Case No. 15-cv-0276-MEJ, 2016 WL 4538367 (N.D. Cal. Aug. 31, 2016) (granting a 12(c) motion on the basis that plaintiff had simply stated she was disabled and had not identified her disability and facts sufficient to show the disability impairs a major life activity); *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1278 (E.D. Cal. 2012) (plaintiff failed to state discrimination claim where claims were "vague as to [the] alleged disability and fail[ed] to identify it precisely."); *Roughgarden v. YottaMark, Inc.*, No. 5:10-cv-04098 JF (PSG), 2011 WL 856279, at *4 (N.D. Cal. Mar. 9, 2011) (dismissing discrimination claim where plaintiff did not allege the nature of his impairment and only "suggest[ed] an impairment" by "referenc[ing] the back surgery he underwent a few months before he was terminated").

## B.    504 Rehabilitation Act (Seventh Claim for Relief)

To recover monetary damages under Title II of the ADA and Section 504 of the Rehabilitation Act, a plaintiff must also "prove a *mens rea* of 'intentional discrimination'" by the City to recover monetary damages. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016). A showing of discriminatory animus alone is not enough. *Id*. "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Duvall*, 260 F.3d at 1139. As to the second element of the test, "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*. A public entity can therefore be liable for damages under the ADA and Section 504 of the Rehabilitation Act "if it intentionally or with deliberate indifference fails to provide meaningful access" to a public benefit. *A.G.*, 815 F.3d at 1204 (citation omitted). The Ninth Circuit has rejected adopting a per se rule that the failure to meet disability standards alone is sufficient to prove intentional discrimination for purposes of damage claims under the ADA and Rehabilitation Act. *See T.B. ex rel. Brenneise v. San Diego Unified Sch.*

1  *Dist.*, 806 F.3d 451, 469 (9th Cir. 2015), *cert. denied sub nom*, *San Diego Unified Sch. Dist. v. T.B.*,

2  136 S. Ct. 1679 (2016).

3       Plaintiff's rehabilitation act claim fails in similar fashion to her ADA claims.  She has not

4  alleged a disability or intentional discrimination.  Plaintiff has not alleged that the City was put on

5  notice of her exclusion from a public benefit by way of a disability nor has she met the second element

6  of the test that the City excluded her from this benefit with deliberate indifference or intentionally

7  discriminated against her.  Accordingly, this claim fails.

8       **C.**     **California Disabled Persons Act (Fourteenth Claim for Relief)**

9       Section 54.1, known as the California Disabled Persons Act ("DPA"), provides that

10  "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the

11  general public to ... modes of transportation [and] places of accommodation." *Schulz v. Bay Area*

12  *Motivate, LLC*, No. 19-CV-02134-MMC, 2020 WL 4464916, at \*5 (N.D. Cal. Aug. 4, 2020) (citing

13  Cal. Civ. Code § 54.1(a)(1)).  "'Full and equal access' is defined by section 54.1 to mean access that

14  complies with the regulations developed under the [ADA], or under state statutes, if the latter impose a

15  higher standard." *Id.* (quoting *Urhausen v. Longs Drug Stores California, Inc.*, 155 Cal. App. 4th 254,

16  261 (2007)). The DPA is not a freestanding statute. *Earll v. eBay, Inc.*, No. 5:11-CV-00262-JF (HRL),

17  2011 WL 3955485, at \*3 (N.D. Cal. Sept. 7, 2011).  "To succeed on a DPA claim, a plaintiff must

18  point to separate California state regulations that prescribe higher accessibility standards than the

19  ADA." *Id.*

20       Plaintiff has not pleaded any such California state regulations to prescribe higher standards

21  than those of the ADA in this context.  Since Plaintiff has also failed to allege an actionable ADA

22  claim, her DPA claims fails in the absence of such allegations. *See e.g., Earll,* 2011 WL 3955485 at

23  \*3.  Accordingly, this claim should be dismissed.

24  **III.**    **PLAINTIFF'S CALIFORNIA-LAW-BASED CAUSES OF ACTION FAIL**

25       **A.**     **Nuisance (Ninth, Tenth, Fifteenth Claims for Relief)**

26       Plaintiff brings three separate causes of action under a nuisance theory, but all fail for the

27  same reason— the City is not the proximate cause of the nuisance alleged by Plaintiff.  Plaintiff's

28  claim is premised on the actions of homeless persons living in the alley near her apartment.  Causation

is an essential element of a nuisance claim.  Order Regarding Motion to Dismiss 28, *1075 Market Street Owners' Ass'n v. U.S. Dep't of Health & Human Servs.*, No. 19-cv-07313-SK (N.D. Cal. Feb. 11, 2020), ECF No. 46.

In *1075 Market Street*, plaintiffs sued alleging nuisance based on the actions of homeless persons.  *Id.*  The court dismissed plaintiffs' nuisance causes of action holding that "Plaintiff has not and cannot allege causation because the criminal acts of others caused Plaintiff's alleged nuisance."  *Id.*  Numerous other courts have reached similar decisions, *see e.g., Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557 (1991) (holding intervening act of a third party is the proximate cause of a nuisance), and the Court should not reach a different result here.

Similarly, in *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350 (2017), the plaintiffs alleged that San Diego was liable for nuisance because it had failed to abate noxious odors from sea lion excrement in La Jolla Cove.  The nuisance claim failed in that case because the sea lions, not San Diego, caused the noxious odors.  *Id.* at 543. And in *Wilson v. Southern California Edison Co.*, 234 Cal. App. 4th 123 (2015), the California Court of Appeal reversed the plaintiff's verdict on her nuisance claim because she had failed to prove that the stray voltage from Southern California Edison's electrical substation proximately caused her injuries.

Here, Plaintiff's claims fail for the same reason.  Under the facts alleged in the complaint, the City simply is not the proximate cause of the alleged nuisance, nor has Plaintiff pled that the City has not undertaken reasonable action to prevent criminal action.  Were the courts to allow such claims to proceed against the City, the City would be flooded with nuisance claims based on the actions of homeless persons.  The law, however, does not authorize such claims to proceed.

### B.      Negligence (Eighth Claim for Relief)

Plaintiff's general negligence claim fails because it lacks the necessary statutory basis.  As a public entity, the City is not liable for an injury arising out of an act or omission of the City or a City employee except as provided by statute. Gov't Code § 815(a).  "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code § 1714."  *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003).  The general tort principles embodied in Civil Code § 1714,

imposing a duty to act with reasonable care, are insufficient to create direct liability and bypass the immunity of Government Code § 815(a).  *Id.*; *see also Lopez v. BNSF Ry. Co.*, No. 1:07-cv-01417-OWW-GSA, 2009 WL 2030887, at *3 (E.D. Cal. July 9, 2009).  "Thus, in California, 'all government tort liability must be based on statute [citation].'"  *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925, 932 (1998), citing *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785, n.2 (1985).  Plaintiff fails to allege any statutory basis for this freestanding negligence claim against the City.  Plaintiff cites Evidence Code 669, but that is merely the Evidence Code provision for Negligence Per Se.  It is a general tort rule; it does not create liability or a specific duty of care for the City and cannot serve as the statutory basis for this claim.  *See Eastburn*, 31 Cal. 4th at 1183.  In any event, Plaintiff does not assert which statute, ordinance, or regulation the City has violated.

Plaintiff also fails to allege negligence by any City employee.  Under Government Code section 815.2(a), the City is liable for injury caused by an employee within the scope of his employment, if the employee's conduct would have given rise to a cause of action against that employee.  "An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff."  *Ann M. v. Pac. Plaza Shopping Ctr.,* 6 Cal. 4th 666, 673, 863 P.2d 207, 211 (1993), *disapproved of on other grounds in Reid v. Google, Inc.*, 50 Cal. 4th 512, 235 P.3d 988 (2010).  Plaintiff does not allege that any City employee owed her a duty that he or she then breached, nor has she alleged that any City employee's conduct proximately caused her injury.  Plaintiff's conclusory allegation that "the conduct, acts, and omissions of individual responsible City officials" caused her harm does not state a claim.  ECF 1 ¶ 62.

## C.   Violation of Mandatory Duty (Eleventh Claim for Relief)

Plaintiff asserts a claim for a violation of a mandatory duty set forth by the Welfare and Institutions Code § 17000.  Plaintiff has not stated a claim for a violation of that provision, does not have standing to pursue such a claim, and the remedies sought by Plaintiff cannot be provided by a cause of action under Section 17000.  The Welfare and Institutions Code states:

"Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." Cal. Welf. & Inst. Code § 17000 (West, Westlaw through Ch. 33 of 2020 Reg. Sess.)

"Courts have interpreted that section to mandate that counties provide subsistence medical care to indigents who do not receive care through other state, federal, or private programs." *Corea v. City & Cty. of San Francisco*, No. A136950, 2014 WL 4795051, at *1 (Cal. Ct. App. Sept. 26, 2014), *as modified on denial of reh'g* (Oct. 24, 2014).

At the threshold, Plaintiff has failed to allege that Defendants fail to provide medical care for the indigent. This alone is outcome determinative.

Plaintiff's claim fails for a second reason—Section 17000 does not authorize suits for money damages. "[I]f a county fails to perform its duty, the remedy is not to impose liability for individual claims, but to require it to fulfill its obligations to the indigent, who are the class of persons benefited under section 17000." *Union of Am. Physicians and Dentists v. Cty. of Santa Clara*, 149 Cal. App. 3d 45, 53, 196 Cal. Rptr. 602 (Ct. App. 1983). Here, Plaintiff does not seek an injunction that would provide care to the indigent. Instead, she seeks money and injunctive relief that would simply move the people living on the street away from her window.

Similarly, Plaintiff does not have standing to pursue injunctive relief under a cause of action for a violation of Section 17000. Since Plaintiff is not an indigent person seeking medical care, she must establish that she is "beneficially interested." *Corea*, 2014 WL 4795051 at *9. "Ordinarily, standing in actions for traditional mandamus is limited to parties who have "a direct interest in the outcome of the writ proceeding." *Id.* at *10. Although there is a discretionary exception, it is a narrow exception that requires plaintiffs to show a "special interest or particular right beyond that possessed by the general public." *Id*.

In *Corea*, plaintiffs sued the City of San Francisco alleging that the City failed to discharge "mandatory duties under sections 17000 and 17001 because the participant cost-sharing fees for HSF were not based on indigent participants' ability to pay and thus resulted in the denial of medical care to indigent residents." *Corea*, 2014 WL 4795051 at *1. In *Corea*, plaintiffs were not indigent people

seeking healthcare, but claimed that there were "large numbers" of people who would be adversely impacted by the alleged violation of statutory duties.  *Id* at *11.  The court found that plaintiffs lacked standing to pursue such claims against the City.  Part of the court's reasoning was that "[g]iven the breadth of the changes and their unquestioned effect on the County's responsibilities to provide subsistence medical care, we agree that the County has shown competing considerations militating against granting public interest standing to Petitioners."  *Id* at *13.  The court held that "after balancing the interests, Petitioners have failed to demonstrate their interests as citizens outweighs the competing considerations identified by the County."  *Id* at *14.

The Court should reach the same conclusions here as the court in *Corea*.  Plaintiff's claim is as a pro per seeking the removal of homeless people from her block and an award of millions of dollars. Plainly, she falls well short of what the court deemed insufficient to confer standing in *Corea*.  The same policy provisions that weighed against standing in *Corea* are in full effect here, especially as the City is grappling with the effects of a global pandemic on the homeless population.  The City has a strong interest that weighs against granting public interest standing for a pro per plaintiff that only seeks to benefit herself.

Nor does Plaintifff have standing to pursue these claims under Article III standing requirements. "[S]tate standing rules need not be honored by the federal courts if Art. III requirements are not met."  *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992).  "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred … in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Plaintiff must allege "injury in fact", "a causal connection between the injury and the conduct complained of", and it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id* at 561.  Here, as it applies to Plaintiff's Welfare & Institutions Code claim, Plaintiff can make no such required showing.  Plaintiff is not an indigent person seeking medical care—she is a housed person seeking millions of dollars in damages.  Plaintiff simply does not have Article III standing to pursue a Welfare and Institution Code 170000 claim in Federal Court.

**D.      Violation of California Constitution Article 1, Section 1 (Twelfth Claim for Relief)**

Plaintiff's claim under Article 1, Section 1 of the California Constitution fails.  "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.'"  *Older v. Superior Court in & for Kern Cty*, 157 Cal. 770, 780 (1910).  The right to safety and to the pursuit of happiness falls in the latter category, and accordingly does not support a right of action.  *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 n.6 (1990) ("Clearly, although safety and happiness are inalienable rights, this provision of the Constitution does not establish the means whereby they may be enjoyed.  No case has ever held that this provision enunciating the inalienable right to obtain safety and happiness is self-executing in the sense that it gives rise, in and of itself, to a private right of action for damages or an affirmative duty on the part of the state to take particular steps to guarantee the enjoyment of safety or happiness by all citizens."); *see also Hammler v. Davis*, No. 2-14-CV-2073 MCE ACP, 2016 WL 336193, at *3 n.5 (E.D. Cal. Jan. 28, 2016), *report and recommendation adopted by* No. 2-14-CV-2073 MCE ACP, 2016 WL 8731359 (E.D. Cal. Mar. 4, 2016) (noting that in related state court action, the superior court found that claim for "violation of the right to pursue happiness" under the California Constitution was "noncognizable in any form").

**E.      Inverse Condemnation Claim (Thirteenth Claim for Relief)**

Plaintiff has not alleged the elements of an inverse condemnation claim, nor can she successfully do so.  Plaintiff asks that this court consider a homeless crisis as the City inversely condemning property, but this is simply not the law.  Plaintiff's complaint does not identify any public improvement project that caused the alleged condemnation—this alone is fatal to this claim.

"To state a cause of action for inverse condemnation, the property owner must show there was an invasion or appropriation (a 'taking' or 'damaging') of some valuable property right which the property owner possesses by a public entity and the invasion or appropriation directly and specially affected the property owner to his injury."  *Beaty v. Imperial Irrigation Dist.*, 186 Cal. App. 3d 897, 903, 231 Cal.Rptr. 128 (Ct. App. 1986)).  "[I]n inverse condemnation, the government is obligated to

pay for property taken or damaged for 'public use' or damaged in the construction of "public improvements."  *City of Los Angeles v. Superior Court*, 194 Cal. App. 4th 210, 221, 124 Cal. Rptr. 3d 499, 507 (2011) (citing *Customer Co. v. City of Sacramento*, 10 Cal. 4th 210, 379–380, 41 Cal. Rptr. 2d 658 (1995)).  A public use is "a use which concerns the whole community as distinguished from a particular individual or a particular number of individuals; public usefulness, utility or advantage; or what is productive of general benefit; a use by or for the government, the general public or some portion of it."  *Customer Co.*, 10 Cal. 4th at 381 (quoting *Miller v. City of Palo Alto*, 208 Cal. 74, 77, 280 P. 108 (1929)).  "A party who does nothing more than establish property damage as the result of negligent conduct of public employees or a public entity has not established a right to recover under a claim of inverse condemnation."  *City of Los Angeles*, 194 Cal. App. 4th at 221 (citing *Customer Co.*, 10 Cal.4th at 381).

Here, Plaintiff does not allege the existence of any public improvement projects and does nothing more than argue she has damages by inaction of a public entity—which is precisely the type of claim that court in *Customer Co.* found not to constitute an actionable inverse claim.  Accordingly, she has not alleged a necessary element of an inverse condemnation claim and the claim should be dismissed.  Furthermore, there is no legal basis for the position that an increase in a neighborhood homeless population constitutes the basis for an actionable inverse condemnation claim against a government entity.

1

## CONCLUSION

2    For the foregoing reasons, Plaintiff's complaint should be dismissed.

3 Dated:  September 9, 2020

4                                         DENNIS J. HERRERA
                                          City Attorney
5                                         MEREDITH B. OSBORN
                                          Chief Trial Deputy
6                                         JEREMY M. GOLDMAN
                                          TARA M. STEELEY
7                                         RENÉE E. ROSENBLIT
                                          RYAN STEVENS
8                                         Deputy City Attorneys

9
                                   By:  */s/ Ryan Stevens*
10                                        RYAN STEVENS

11                                        Attorneys for Defendant(s)
                                          CITY AND COUNTY OF SAN FRANCISCO
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, KASSY ADAMS, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action.  I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

On September 9, 2020, I served the following document(s):

**NAME OF DOCUMENT**

on the following persons at the locations specified:

Patrina Harrison
650 Eddy Street, No. 207
San Francisco, CA  94109
Tel:  (415) 567-8182
Fax: (415) 567-8182
harrisonempa@gmail.com

Plaintiff in Pro Per

in the manner indicated below:

☒       **BY UNITED STATES MAIL**:  Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service.  I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail.  In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☒       **BY ELECTRONIC MAIL:**  I caused a copy of such document to be transmitted *via* electronic mail in portable document format ("PDF") Adobe Acrobat from the electronic address:  kassy.adams@sfcityatty.org.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed September 9, 2020, at San Francisco, California.

_____
KASSY ADAMS