UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PATRINA HARRISON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant. | Case No. 20-cv-05178-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 19 |

Before the Court is Defendant's motion to dismiss. ECF No. 19. The Court will grant the motion with leave to amend.

## I.   BACKGROUND

On July 23, 2020, Plaintiff Patrina Harrison filed this action against the City and County of San Francisco (the "City"). Complaint ("Compl."), ECF No. 1. Plaintiff alleges that "[t]he City's acts and omissions . . . that allowed for the tents that ignited into flames under the bedroom and living room windows of Plaintiff Harrison, [and] served as the City's repository for its homeless population . . . have created dire consequences for Plaintiff." *Id.* ¶ 27. In particular, she alleges that the City's acts and omissions have caused "(a) an increased risk of infection of COVID-19; (b) interference with plaintiff's property rights; (c) loss of plaintiff's business, educational, and other opportunities; (d) interference with plaintiff's California constitutional right to pursue happiness; (e) interference with plaintiff's Federal Due Process rights; and (f) interference with plaintiff's Federal Equal Protection rights." *Id.*

Plaintiff resides and operates an essential business out of her apartment at 650 Eddy Street in San Francisco, located within the "Tenderloin" neighborhood. *Id.* ¶¶ 1, 11. The Tenderloin is an approximately 50-city-block neighborhood in downtown San Francisco, which has, for most of

its existence, "attracted residents from the working class and lower income segments of San Francisco society." *Id.* ¶¶ 13-14.  The Tenderloin neighborhood is "blighted by large populations of unhoused [people]," including "individuals living in tents alone [sic] the walls directly under the bedroom and living [room] windows of Plaintiff Harrison's rental unit." *Id.* ¶ 1.

Plaintiff alleges that these tents "catch[] on fire on a weekly basis," which results in smoke entering into Plaintiff's apartment through vents and windows. *Id.*  When this happens, Plaintiff "must immediately vacate her apartment unit for several hours out of the day." *Id.*  For example, on July 18, 2020, two tents caught on fire and Plaintiff's apartment was "engulfed with thick clouds of black and white smoke" which left debris and damaged her possessions. *Id.* ¶¶ 17, 20-21, 24.  She experiences dizziness, congestion, and shortness of breath from the smoke and fumes, and an odor of smoke and chemicals is left on her personal property which cannot be removed. *Id.* ¶ 4.  Plaintiff further alleges that this situation has put her "at high risk for infection and contracting the COVID-19 infection." *Id.* ¶ 5.  Her business has also been negatively impacted by a "reduction in clientele, as such visitors cite the conditions of the sidewalk in the alley." *Id.* ¶ 11.  Furthermore, Plaintiff frequently has to "detour[] out into the street and into traffic because the sidewalks near the exit door of her apartment [are] blocked by tents." *Id.* ¶ 25.

"On March 16, 2020, in response to the COVID-19 pandemic, Mayor London Breed directed San Francisco businesses to close and issued a citywide shelter-in-place order." *Id.* ¶ 26. Since then, Plaintiff alleges that it has been the "de facto policy" of Defendant, the City and County of San Francisco, to "use the Tenderloin community as a tent containment zone for the unhoused homeless," which has impacted the livability and safety of Plaintiff's apartment building. *Id.* ¶ 2.  Specifically, the City's COVID-19 Health Directive states that the City is not taking away tents, but instructs individuals to keep tents 6 feet apart, keep sidewalks clear, keep tents 6 feet away from doorways, transit stops, bike sharing stations and fire hydrants, not to use fire, to limit contact with other people and to wear a face covering when around others. *Id.* ¶ 19. Plaintiff alleges that many people residing in tents near her home do not wear masks or otherwise follow the Health Directive. *Id.* ¶ 24.

After the July 18, 2020 fire, Plaintiff called 911 to request that police remove the

1   remaining tents under her windows, citing the potential fire hazard. *Id.* ¶ 22. Police were
2   dispatched but refused to relocate the tents, citing the COVID-19 Health Order. *Id.* ¶¶ 22-23.
3   Plaintiff alleges that the number of persons living outside her windows has increased since the
4   beginning of the pandemic. *Id.* ¶ 23.

5   The City now moves to dismiss the complaint for failure to state a claim. ECF No. 19.
6   Plaintiff has filed an opposition, ECF No. 21, and the City has filed a reply, ECF No. 28.

## II.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

In addition, "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

Harrison's complaint alleges 16 causes of action. Defendant argues that each fails to state a claim upon which relief can be granted or fails to allege facts sufficient to state a claim.

United States District Court
Northern District of California

### A. Section 1983 Claims

Plaintiff brings four claims under 42 U.S.C. § 1983 rooted in the due process clause of the Fourteenth Amendment, the equal protection clause of the Fourteenth Amendment, and the takings clause of the Fifth Amendment.

First, Plaintiff alleges that the City has denied her due process of law by "abandoning its duties . . . to ensure safe and secure living conditions" for Plaintiff. Compl. ¶ 35. Defendant argues that this fails to state a claim because the City does not have an affirmative duty to protect Plaintiff's property, nor has Plaintiff alleged a protected interest giving rise to a procedural due process claim. ECF No. 19 at 11. In response, Plaintiff suggests that her claim is covered by the "state-created danger" doctrine. ECF No. 21 at 9 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). However, a claim that the government created the danger from which it has a duty to protect a plaintiff requires that the government "acted 'affirmatively,'" and in such a way as to put the plaintiff "in a 'worse position than that in which he would have been had [the state] not acted at all.'" *Pauluk v. Savage*, 836 F.3d 1117, 1124 (9th Cir. 2016) (citation omitted). Here, Plaintiff has only alleged that "police refused to relocate the tents citing the COVID-19 Health Order on the unhoused and shelter-in-place in tents," and that, at the time of the Complaint, the City had not provided "widescale testing for people living in tents on the streets." Compl. ¶ 23. Because there is no suggestion that the City itself placed the tents near Plaintiff's property or took any other affirmative act that created the conditions Plaintiff complains about, her due process claim fails.

Second, Plaintiff alleges that the City has violated her right to equal protection by "enforcing the law in some areas and declining to enforce the law in others." *Id.* ¶ 38. Specifically, Plaintiff states that the City "has arbitrarily determined where homeless encampments may or may not be located and what communities should be affected" and thereby "placed a disproportionate burden on Plaintiff." *Id.* Defendant responds that this fails to state a claim because it is "vague and conclusory," because "the challenged conduct does not discriminate against a protected class or impinge on fundamental rights," and because Plaintiff has not shown that the City's actions were "not rationally related to [a] legitimate government objective. ECF

4

No. 19 at 14-15. Plaintiff responds by explaining that she alleged that "the Tenderloin Community was a government sanctioned containment zone," while other communities were "exempted from the allowing for the unhoused homeless to shelter in tents under Mayor Breed's Order." ECF No. 21 at 9-10. These allegations fail to state a claim. Plaintiff has not alleged that the City discriminated against a protected class or lacked a rational basis for its policy choices. *See Pantoja v. Los Angeles Cnty.*, No. CV 19-2132 JFW (SS), 2019 WL 4280063, at *11 (C.D. Cal. Aug. 13, 2019), *report and recommendation adopted*, No. CV 19-2132 JFW (SS), 2019 WL 4276633 (C.D. Cal. Sept. 10, 2019) (dismissing equal protection claim where the plaintiff "d[id] not allege any facts showing that she was treated worse than other similarly situated persons who are not part of a disfavored group").

Third, Plaintiff alleges that the City's actions "limited, damaged, and/or burdened the property owners so substantially that they rise to the level of a regulatory taking," and no compensation has been provided. Compl. ¶ 44. Defendant asks the Court to dismiss this claim because, again, Plaintiff has not alleged affirmative acts by the City that amount to a "taking" of Plaintiff's property, and because Plaintiff lacks a constitutionally protected property interest in anything that has allegedly been "taken." ECF No. 19 at 12. Plaintiff argues that her claim falls under the "per se rule" that "[a] physical taking occurs when a public agency regulation requires a physical presence on a property, no matter how small." ECF No. 21 at 9 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). Plaintiff argues that she "lost personal property" which was "constructively removed from her apartment unit for indefinite amounts of time as a result of the state created danger." ECF No. 21 at 9.

*Loretto* does not assist Plaintiff. In that case, a New York City landlord sued a cable television company, claiming that the cable company's installation of its facilities on the landlord's property pursuant to New York law requiring a landlord to permit installation of such facilities on rental property constituted a constitutionally compensable taking. The Supreme Court held, *inter alia*, that the physical occupation of plaintiff's rental property by the cable company's cables constituted a taking even though the New York law might be valid. *Id.* at 425-26. Harrison, by contrast, does not allege any affirmative act by the City, much less an act that "so

1    frustrates property rights that compensation must be paid." *Id.* at 425.  Accordingly, her takings

2    claim also fails.

3           Fourth, Plaintiff alleges that the City and its agents acted with deliberate indifference and

4    conscious and reckless disregard for Plaintiff's rights pursuant to a policy, procedure, or custom.

5    Compl. ¶ 48.  Defendant argues that this freestanding *Monell* claim should fail because "it

6    advances no claim that is legally distinct from any of the preceding constitutional claims."  ECF

7    No. 19 at 16.  Because Plaintiff has failed to allege an underlying constitutional violation, there is

8    no liability under *Monell*.  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir.

9    2008) ("Because there is no constitutional violation, there can be no municipal liability."); *Wroth*

10   *v. City of Rohnert Park*, No. 17-CV-05339-JST, 2019 WL 8333513, at *4 (N.D. Cal. Dec. 3,

11   2019) (a *Monell* claim is not possible without an underlying constitutional violation).  Plaintiff's

12   first, second, third, and fourth causes of action are dismissed without prejudice for failure to state a

13   claim.

14       **B.**    **ADA and Rehabilitation Act Claims**

15          Plaintiff brings two claims under the ADA.  First, she alleges that Defendant violated Title

16   II of the ADA, which requires that sidewalks be accessible for use by wheelchair-bound persons.

17   Compl. ¶¶ 51-53.  Plaintiff says that "[w]ithin the limits of [her] living room and bedroom

18   windows, the City is failing to uphold its obligations to maintain clear and accessible sidewalks

19   and public rights-of way for plaintiff who is a disabled resident." *Id.* ¶ 53.  Second, Plaintiff

20   alleges that Defendant violated Section 504 of the Rehabilitation Act, which prohibits excluding a

21   person with a disability from participating in or receiving the benefits of any program or activity

22   receiving federal financial assistance. *Id.* ¶ 56.  Plaintiff states that she is "otherwise qualified to

23   participate in the services, programs, or activities that are provided to individuals in the City," that

24   the City "is a recipient of federal financial assistance," and that the City, its agents and employees

25   therefore violated Section 504 by "excluding Plaintiff." *Id.* ¶ 57.

26          Defendant argues that Plaintiff's allegations are insufficient to support a claim under the

27   ADA or Section 504 because she has not sufficiently alleged her own disability, intentional

28   discrimination by the City, or that the City was on notice of Plaintiff's exclusion from a public

1  benefit. ECF No. 19 at 18-19. Plaintiff responds that she "has a verifiable ambulatory disability,

2  which requires ambulatory assistive device," and that by "allowing the unhoused to shelter in tents

3  under plaintiff's window," Defendant "prevent[ed] plaintiff from accessing the sidewalk,

4  result[ing] in an ADA violation." ECF No. 21 at 11; *see also* Compl. ¶ 11; *id.* ¶ 24 (describing a

5  fear of using her "ambulator device on the sidewalk").

6         The Court finds that Plaintiff's ADA and Section 504 claims are deficient. First, neither

7  Plaintiff's complaint nor the additional facts alleged in her opposition sufficiently allege a

8  disability.[1] *See Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-02726-MEJ, 2016 WL 4538367,

9  at *2 (N.D. Cal. Aug. 31, 2016) (finding allegations that plaintiff "used a scooter" and "is a

10  qualified individual with a disability" insufficient to allege a disability and show that the disability

11  impairs a major life activity). Second, "[t]o establish a claim for damages under the Rehabilitation

12  Act . . . a plaintiff must prove that the defendant intended to discriminate on the basis of his or her

13  disability, or was deliberately indifferent to the disability." *T.B. ex rel. Brenneise v. San Diego

14  Unified Sch. Dist.*, 806 F.3d 451, 466 (9th Cir. 2015). "Deliberate indifference requires that a

15  defendant had knowledge of a substantial likelihood of harm to a federally protected right and

16  failed to act." *H. v. Mill Valley Sch. Dist.*, No. 15-CV-05751-HSG, 2016 WL 3162174, at *3

17  (N.D. Cal. June 7, 2016) (citations omitted). "Because in some instances events may be

18  attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or

19  inaction," the Ninth Circuit has "stated that deliberate indifference does not occur where a duty to

20  act may simply have been overlooked, or a complaint may reasonably have been deemed to result

21  from events taking their normal course." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.

22  2001). Here, Plaintiff's allegations that the City acted "purposefully," "with knowledge,"

23  "recklessly," or "negligently," are conclusory and are not supported by factual allegations of the

---

[1] When reviewing a motion to dismiss for failure to state a claim, the Court will generally only consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

City's intent to discriminate against Plaintiff.  *See, e.g., H. v. Mill Valley Sch. Dist.*, 2016 WL 3162174, at *3-4 (finding deliberate indifference adequately pled based on numerous actions taken against plaintiff because of his disability).  Accordingly, Plaintiff has not stated a claim under the ADA or Section 504.  These claims are also dismissed without prejudice.

### C. State Law Claims

Defendant also moves to dismiss the remaining eight causes of action, all of which arise under state law.  The only jurisdiction this Court might exercise over those claims is supplemental jurisdiction, pendent from Plaintiff's federal claims.  "Because it is presently unclear whether plaintiff can state a viable claim under federal law, the court declines to exercise jurisdiction over plaintiff's state law claims at this time."  *Ocampo v. Aurora Loan Servs.*, No. 11-CV-01145-MMM(DTBX), 2012 WL 13014961, at *6 (C.D. Cal. July 6, 2012).  The Court will defer a ruling on those claims until such time as Plaintiff asserts at least one viable federal claim.  *Graves v. Downey Sav. & Loan Assoc.*, No. C 09-02666 JF (RS), 2009 WL 3335335, at *5 (N.D. Cal. Oct. 14, 2009) ("Because it remains unclear whether Plaintiffs have any viable federal claims, the Court will defer its review of Plaintiffs' remaining state-law claims.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted.  Plaintiff may file an amended complaint within 28 days from the date of this order for the sole purposes of curing the defects identified herein or to address issues raised in Defendant's motion, but Plaintiff may not add new claims without leave of Court.  Failure to timely file an amended complaint will result in dismissal of all claims against Defendant with prejudice.

**IT IS SO ORDERED.**

Dated:  April 30, 2021

_____
JON S. TIGAR
United States District Judge

8