20200000081
Patrina Harrison
650 Eddy Street No. 207
San Francisco, CA 94109
Tel: (415) 567-8182 | Fax: (415) 567-8182
harrisonempa@gmail.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

PATRINA HARRISON,

     Plaintiff,

vs.

CITY AND COUNTY OF SAN FRANCISCO,

     Defendant

Case No.: 20-cv-05178-JST

**FIRST AMENDED COMPLAINT:**

**1. VIOLATION OF DUE PROCESS (42 U.S.C. § 1983; U.S. CONST. AMEND. V/XIV);**
**2. VIOLATION OF EQUAL PROTECTION (42 U.S.C. § 1983; U.S. CONST. AMEND. V/XIV);**
**3. VIOLATION OF DUE PROCESS CLAUSE, STATE-CREATED DANGER DOCTRINE (42 U.S.C. § 1983; U.S. CONST. AMEND. XIV);**
**4. UNCOMPENSATED TAKING (42.U.S.C. § 1983; U.S. CONST. AMEND. V/XIV);**
**5. MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM OR POLICY (42 U.S.C. § 1983);**
**6. VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §§ 12131 ET SEQ.);**
**7. VIOLATION OF SECTION 504 OF THE REHABILITATION ACT (29 U.S.C. §§ 794 ET SEQ.);**

1

**FIRST AMENDED COMPLAINT**

**8. NEGLIGENCE**
**9. PUBLIC NUISANCE (CAL. CIV. CODE §§ 3479;3480; 3490 ET SEQ.); PENAL CODE 372 §§ 372; 373A ET SEQ**
**10. PRIVATE NUISANCE (CAL. CIV. CODE; NUISANCE PER SE §§ 3501 ET SEQ.);**
**11. VIOLATION OF MANDATORY DUTY (CAL. GOV'T CODE § 815.6; CAL. WELF. & INST. CODE § 17000);**
**12. DEPRIVATION OF THE GUARANTEE OF SAFETY AND THE PURSUIT OF HAPPINESS (CAL. CONST. ART. I § 1);**
**13. INVERSE CONDEMNATION (CAL. CONST. ART. I § 19);**
**14. VIOLATION OF CALIFORNIA DISABLED PERSONS ACT (CAL. CIV. CODE §§ 54 ET SEQ**
**15. CAL. CIV, CODE SECS. 3333-3343.7 ART. 2 DAMAGES FOR WRONGS**
**16. VIOLATION OF PUBLIC POLICY - HEALTH & HYGIENE; CA CIV. CODE §3479**

## I.    INTRODUCTION

1.      Patrina Harrison ("Plaintiff") is disabled, and has a  physical disability, an impairment diagnosed by physicians as  bilateral lumbar Radiculopathy, Idiopathic, Degenerative Scoliosis with Sciatica, and  such impairments substantially limits one or more of Plaintiff's major life activities, that is walking.  As a result of Plaintiff's physical disability, Plaintiff  uses a cane to assist with walking, and had attempted to walk down the tent surrounded side walk and had  fallen in efforts of ambulating  with her cane, trying to go

2

**FIRST AMENDED COMPLAINT**

around tents  impending the side walk near the building where she resides.  Plaintiff further alleges that she sustained injuries to her knee and leg from falling while over the tents surrounding the side walk.

2.     Plaintiff alleges that Defendant City and County of San Francisco showed indifference to her federally protected right under ("ADA") and her physical disability, since Defendant City and County of San Francisco had knowledge of a substantial likelihood of harm to a federally protected right, and failed to act by denying Plaintiff's claim, through the assumption that the City and County of San Francisco had no affirmative duty to remove the tents from  sidewalk so Plaintiff can walk with her cane safely on the city sidewalk while she is disabled.

3.     Plaintiff Harrison further asserts that Defendant intended to discriminate against her on the basis of  her disability, since Defendant had knowledge of Plaintiff's physical disability through a claim Plaintiff  filed with the San Francisco City Attorney Office, that put  Defendant on notice of Plaintiff's federally protected right and Plaintiff's physical disability that required the removal of the tents from the sidewalk, so Plaintiff could ambulate on the sidewalk safely with her cane.  Here,  Defendant City and County of San Francisco,  deliberately failed  to recognized the knowledge of a substantial likelihood of harm to Plaintiff's a federally protected right as Defendant  failed to act on the claim filed by Plaintiff to remove the tents from the side walk.  As a result of  Defendant denying Plaintiff's claim, Plaintiff 's federally protected right was violated, and resulted in injuries from  Plaintiff falling over the tents on the city sidewalk, while she walked with her cane.

**FIRST AMENDED COMPLAINT**

4.       Plaintiff Harrison, is a participant of the City and County of San Francisco City Sponsored Shelter Plus Program, a program ran and operated by Defendant City and County of San Francisco, at 650 Eddy Street, No. 207, San Francisco, California.  The building where Plaintiff resides is owned  by Defendant City and County of San Francisco, and is located within San Francisco's Tenderloin neighborhood, a community blighted by  large populations of unhoused, groups of homeless individuals living in tents alone the walls directly under the bedroom and living windows of Plaintiff Harrison's rental unit, this is where such individuals uses the ground, directly below plaintiff's windows to transact the sales of controlled substance ("STREET DRUGS"), fight,  urinate, vomit, defecate, and all such odors  emits into plaintiff's apartment through open vents, spacing in between vent covers, the kitchen fan, open windows, the window seals and fire exit door.

5.        This action puts plaintiff Harrison in immediate threat of harm from repeatedly falling while ambulating with her cane, and also by the possible  COVID-19 infection, and other respiratory illnesses. Plaintiff Harrison is also put into imminent harm  due to  the large number of tents blocking the sidewalk, which prevents her from ambulating safely with her cane.

6.       Other threatens to Plaintiff's  safety,  is the reality that such tents catch on fire on a weekly basis, in which creates clouds of  thick, heavy smoke from  burning tent fabric, clothing articles, pots, pans, shoes, blankets, televisions, lamps, milk crates, and all other personal articles stored inside the tents, whereas such burn off and smoke enters into plaintiff's rental apartment through the vents, spacing between vent covers,  window seals,

4

**FIRST AMENDED COMPLAINT**

kitchen fan and fire exit door of the apartment complex , as the fire exit door is immediately adjacent to  the front entrance door of plaintiff's apartment.  Upon each event of such smoke encroaching into plaintiff 's apartment, plaintiff must immediately vacate her apartment unit for several hours out of the day, on a daily basis, and this happens even when plaintiff is in the process of utilizing her personal property.

7.      Since the onset of the COVID-19 pandemic, the de facto policy of the City and County of San Francisco to use the Tenderloin community as a tent containment zone for the unhoused homeless, has resulted in a histrionic decline in the livability and safety in and around the apartment building where plaintiff resides within the Tenderloin district as a result of tents cluttering the sidewalks where plaintiff resides, street drug sales, smoke interaction and human waste littering the sidewalks .

8.      The COVID-19 pandemic has menacingly intensified a dangerous and harmful situation for Plaintiff Harrison, since the tents aligned against the walls under Plaintiff Harrison's bedroom and living room windows has been igniting into fire several times per week as a result of lite candles  inside unattended  tents, as well as from tent resides smoking cigarettes, weed, crack, and other lit, inhaled substance while sheltered inside the tents. Some tents have deliberately been set on fire resulting from "CRACK FIGHTS", between tent neighbors' which has and facilitates the lighting of tents on fire several times per week, happening directly under plaintiff's bedroom and living room windows by the unhoused, and for which such interaction takes control of plaintiff's apartment, and personal property, as plaintiff  constructively vacates her unit.

5

**FIRST AMENDED COMPLAINT**

9.     During the time in between and up to the tent fires, plaintiff is forced to inhale harmful second-hand smoke fumes, and fumes emitting from tents as a result of the unhoused smoking crack, weed, cigarettes, burning incents, spraying perfume as well as from tent shelterees spraying and sniffing paint from spray cans, as such individuals stand directly underneath  plaintiff's windows, while the such emission encroaching directly into plaintiff's apartment, making plaintiff  dizzy, and experiencing  congested ears, nose and shortness of breath upon each occasion, while leaving an odor or smoke and chemicals on personal property the cannot be removed.

10.     For this is the everyday interaction taking place under the living room and bedroom windows of Plaintiff's apartment, on a 24-hour basis, 7 days per week, since the Mayor's COVID-19 Health Order has been in effect, which allows for the unhoused to shelter in tents undisturbed.

11.     Plaintiff makes the factual allegations and assert the legal claims herein in an effort to compel the City and County of San Francisco to comply with Plaintiff's federally protected right.  Plaintiff seeks damages for the taking of  her personal property, as well as for personal injuries plaintiff has sustained from falling over tents, and  the inhalation of smoke from burning tents, burning weed, crack, chemical substance, the odor of human waste, and cigarettes smoke emitting into plaintiff's rental apartment through the vents, spacing in between vent covers, window seals, open windows, kitchen fan and fire exit door.

**FIRST AMENDED COMPLAINT**

12.     As this is the situation, it puts plaintiff at high risk for physical injury, infection and contracting the COVID-19 infection, as well as such actions has resulted in the illegal taking of plaintiff's personal property, whereas such personal property has been damaged beyond repair as a result from the tent fires, whereas such property smell of heavy smoke, and when plaintiff's comes into contact with such articles, plaintiff itches profusely, while experiencing shortness of breath and difficulty swallowing, and as a result, all such personal property has to be discarded necessary to elevate such symptoms plaintiff has been experiencing since the smell of smoke has since saturated all plaintiff's personal property. As well, plaintiff is forced to vacate her unit on a daily, and continuous basis due to the smoke and order encroaching her apartment unit.

## II. JURISDICTION AND VENUE

13.     Plaintiffs assert the claims herein pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. (the "ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. ("Section 504"); and the Fifth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201 & 2202.

14.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as Plaintiffs' federal claims.

15.     Plaintiff has submitted a compensation claim with the City and County of San Francisco, Controller's Office Claims Division, in compliance with California Tort Claims Act,

**FIRST AMENDED COMPLAINT**

Cal. Gov't Code §§ 810 et seq.1, and such claim was denied on the ground that Defendant has no affirmative duty to remove the tents from the city sidewalk so Plaintiff can walk with her cane safely on the city sidewalk while Plaintiff is disabled.

16.     The acts and omissions complained of herein occurred in the City and County of San Francisco, Northern District of California. Accordingly, pursuant to 28 U.S.C. § 1391, venue is proper in this Judicial District.

### III. INTRADISTRICT ASSIGNMENT

17.     A substantial part of the events or omissions that give rise to the claims asserted herein occurred in the City and County of San Francisco, and a substantial part of the property that is the subject of this action is situated in the City and County of San Francisco.

### IV. PARTIES

**A. Plaintiff**

18.     Plaintiff Harrison (Plaintiff"), is disabled, and has a physical impairment that requires the use of a cane to walk. Plaintiff Harrison resides within the Tenderloin neighborhood, and resides at and operates an essential business from her rental apartment, located at 650 Eddy Street No. 207 San Francisco, CA since 2013. Since the Mayor's Shelter in Place COVID-19 Health Order has taken effect, Plaintiff has seen a reduction in clientele, as such visitors cite the conditions of the sidewalk in the alley, where they would usually park their vehicle, prior to the Mayor's COVID-19 Health Order.

8

**FIRST AMENDED COMPLAINT**

**B. Defendant**

19.     Defendant CITY AND COUNTY OF SAN FRANCISCO ("Defendant" or the "City") is

a municipal entity existing under the laws of the State of California, with the capacity to sue

and be sued.

## V. FACTUAL ALLEGATIONS

**A.  History of the Tenderloin Neighborhood**

20.     The "Tenderloin" is an approximately 50-city block neighborhood in downtown

San Francisco that has been known by that name for more than a century. Although not all

authorities agree on the Tenderloin's precise metes and bounds, the trapezoid-shaped region

is roughly bordered on the west by Van Ness Avenue, on the north by Post Street, on the east

by Mason Street, and on the south by Market Street.

21.     For most of its existence, the Tenderloin has attracted residents from the

working-class and lower income segments of San Francisco society.  The socioeconomic

fortunes of the Tenderloin have waxed and waned significantly over the past 60 years.

22.     Specifically, the distinctive character of the Tenderloin experienced a sharp

decline in the 1960s. By 1971, the neighborhood was described by The New York Times as the

"porn capital of the USA."[2] Prostitution and illegal drug trafficking were open and notorious,

and housing conditions deteriorated.

23.     Open-air drug transactions are routinely tolerated in the Tenderloin. The easy

availability of illegal drugs attracts users and intensifies the homelessness problem. Some

42% of the homeless population are estimated to suffer from alcohol or drug addiction.

**FIRST AMENDED COMPLAINT**

24. The Sidewalks in the alley under and adjacent to plaintiff's bedroom and living room windows in the Tenderloin is now crammed with the unhoused, tents, some of which contain as many as five to seven individuals at any given time residing within them. Displayed below is a photograph taken on July 19, 2020, that shows some of the personal property plaintiff has loss, as well as the reflection of the burned debris from two tents on July 18, 2020, and the existing tents housed under the bedroom and living room window of plaintiff's apartment, and across the alley from plaintiff's bedroom and living room window. Other photos depict some of plaintiff's personal property which has to be discarded due to smoke saturation, which has invalidated such property since plaintiff has a sensitivity when in contact with such property.



**FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20



21
22
23
24
25
26
27
28

**FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



26
27
28

**FIRST AMENDED COMPLAINT**





13

**FIRST AMENDED COMPLAINT**





**FIRST AMENDED COMPLAINT**



25.     The tents placed under the bedroom and living room windows of Plaintiff Harrison's apartment presents an immediate and dire public health problem for her, and have resulted in Plaintiff's physical injuries, and the continual threat to the health and safety of Plaintiff Harrison, as a result of ambulatory hazards, fire hazard, exposure to infection, and inhalation of burned substance, human waste, and COVID-19 infection.

26.     The City and County of San Francisco's COVID-19's Health Directive stipulates on https://sf.gov/information/homelessness-and-covid-19 that while unsheltered "The City is not taking away tents. If you're living in a tent:" " Keep tents 6 feet apart (at most 5 tents in one block); Keep sidewalks clear, keep your tent 6 feet away from doorways, transit stops, bike sharing stations, or fire hydrants, Do not have fire, or leave out things that can catch on fire.  Hang out with as few people as possible. Try to only spend time with the same people. Wear a face covering when you're around others and stay 6 feet apart."

FIRST AMENDED COMPLAINT

27.     On <u>July 16, 2020,</u> While Plaintiff was walking with her cane, she tripped and fell over a tent on the sidewalk under her living room, injuring her leg and knee.  On <u>July 18, 2020,</u> Plaintiff was sitting in the living room of her apartment, when she saw a thick cloud of black and white smoke engulf in fire approaching and reaching the glass of her open living room window. Plaintiff went to her bedroom window, looked out and saw two tents on fire, exactly in the building's doorway of the fire exit, underneath her bedroom window.   Plaintiff immediately called 911 and requested dispatch of a fire rescue to extinguish the fire of the two tents under her bedroom window.   By the time the call to 911 ceased, Plaintiff Harrison's entire apartment was engulfed with thick clouds of black and white smoke, forcing Plaintiff Harrison to vacate her rental apartment, leaving the front door open.

28.     Plaintiff Harrison waited in the hallway of the apartment building until the fire was extinguished.  After waiting in the hallway for more than 45 minutes, Plaintiff returned to her apartment, to find that her apartment was completely engulf in thick, clouds of smoke, smelling of burning plastic, fabric, paper, and hair throughout her apartment, extending to her personal belongs, such as clothing, books, furniture, papers, equipment, supplies, shoes, coats, and all other household goods stored inside of plaintiff's apartment.

29.     Plaintiff Harrison called 911 to request the dispatch of a police unit to remove the remaining tents from under her living room and bedroom windows, citing the inability to walk with her can safely, and fire hazard.  A police vehicle was dispatched to the alley at Polk and Willow Street, where plaintiff's bedroom and living room windows are situated.

16

**FIRST AMENDED COMPLAINT**

30.     The police refused to relocate the tents citing the COVID-19 Health Order on the unhoused and shelter-in-place in tents.  Despite the high risk of infection and other dangers posed to plaintiff outside her windows the city has yet to implement widescale testing for people living in tents and on the streets.  The influx of the homeless population underneath plaintiff's windows has grown since the onset of the COVID-19 pandemic, and is steadily going underneath of plaintiff's window.  In reference to the matter of UC Hastings v. City and County of San Francisco; 3;20-cv-03033, the plaintiff's asserted that  (ln 6) " The pandemic has ominously exacerbated dangers and harms to those who live, work, and go to school in the Tenderloin, and it threatens to do so for years to come as successive waves of infection bring further death and despair."  Plaintiff agrees with that factual allegation.

31.     Hours after the burning tents were extinguished, plaintiff's apartment, furniture, clothing, library and books, and all other personal items and effects, smelled of smoke, and for which resulted in  plaintiff suffering from shortness of breath, dizziness, burning, itchy throat, eyes, nose, ears and  sever chest and back pain as a direct result of inhaling the smoke from the burning tents under plaintiff's bedroom window. Plaintiff purchased vent covers which does not prevent the encroachment of such smoke, due to spacing in between the vent covers. Whereas  since the vents releases the smell of burnt plastic smells and smoke constantly, and for this reason, plaintiff has to open all of her apartment windows necessary for ventilation to enter her apartment,  and for which puts plaintiff at risk for transmission of  COVID-19, since the unsheltered stands underneath

17
**FIRST AMENDED COMPLAINT**

plaintiff's windows all day and night, as those unhoused residing in tents do not wear mask, nor following social distance stipulated within the Mayor's COVID-19 Health Order.  And whereas such unhoused constantly smoke lit inhalants, while refusing to clear the path on the sidewalk, when plaintiff tries access the sidewalk to ambulate to and from essential travels, whereas plaintiff is afraid of being attacked for simply inconveniencing such individuals" by trying to use her ambulator device on the sidewalk.

32.     On numerous occasions, plaintiff has been exposed to the smoke of burning tents, burning inhalants which has resulted in plaintiff experiencing chronic breathing difficulties and long-term respiratory difficulties.  On various occasions, plaintiff has detoured out into the street and into traffic because the sidewalks near the exit door of her apartment is blocked by tents.

33.     Plaintiff has witnessed an extreme change in the conditions of the streets and sidewalks of her apartment building located within the Tenderloin, and  in recent months, particularly since the City enacted the emergency shelter-in-place ordinance in response to the COVID-19 pandemic, currently, drug pusher and users assemble underneath plaintiff's windows, which is in the back alley of plaintiff's rental apartment.  Such actions make it impossible for plaintiff to access the sidewalks without walking very near such individuals, and for which putting plaintiff at risk for contracting the COVID-19 infection.

### 6. EFFECT OF THE COVID-19 PANDEMIC

34.     On March 16, 2020, in response to the COVID-19 pandemic, Mayor London Breed directed San Francisco businesses to close and issued a citywide shelter-in-place order. The

18

**FIRST AMENDED COMPLAINT**

homeless population in the Tenderloin, however, have no place in which to shelter. Homeless

people are exempted from social distancing conventions.

35.     The City's acts and omissions, whether intentional or negligent, that allowed

for the Plaintiff to fall over tents, and for tents to ignited into flames under the bedroom and

living room windows of Plaintiff Harrison, served  as the City's repository for its homeless

population (as Supervisor Haney outlines in his letter and as Plaintiffs have detailed above)

have created dire consequences for  Plaintiff.

36.     The City's acts and omissions threaten Plaintiff with the following specific

consequences: (a) an increased risk of hospitalization sue to exposure to toxic smoke

emitting from burning tents, and COVID-19 infection (b) interference with plaintiff's property

rights; (c) loss of plaintiff's business, educational, and other opportunities; (d) interference

with plaintiff's California constitutional right to pursue happiness; (e) interference with

plaintiff's Federal Due Process rights; and (f) interference with plaintiff's Federal Equal

Protection rights.

37.     On April 20, 2020, District 6 Supervisor Matt Haney transmitted a letter to

Mayor Breed and other City officials regarding the Tenderloin's crisis.   In his detailed letter,

Supervisor Haney explained (among many other things) how Tenderloin residents are

"uniquely vulnerable to the spread of COVID-19" and how the proliferation of tents on the

sidewalks of the Tenderloin creates "extreme health hazards for everyone."  Supervisor

Haney closed his letter with a demand for "a specific, targeted intervention strategy from the

City" to "slow the spread of the virus, save lives, and protect everyone in our city."

19

**FIRST AMENDED COMPLAINT**

38.     Letter from Matt Haney, Supervisor, San Francisco District 6, to London Breed, Mayor, City of San Francisco, et al. (Apr. 20, 2020).   infection of COVID-19; (b) interference with their property rights; (c) loss of their business, educational, and other opportunities; (d) interference with their California constitutional right to pursue happiness; (e) interference with their Federal Due Process rights; and (f) interference with their Federal Equal Protection rights.

39.     Defendant is legally obligated to act quickly to protect Plaintiffs' legal rights (as articulated in their claims set forth below) as well as their heath and lives. The Tenderloin's long role as the City's containment zone must cease.

40.     As a result of defendant's actions and omission, plaintiff was harmed and suffered personal injuries and statutory injuries, whereas both injuries are particularized, and concrete and such that of tangible and intangible harm.

41.     Plaintiff has established liability for deprivation of constitutional rights actionable under 42 U.S.C. Section 1983.

42.     Plaintiff seeks damages for personal injuries, the taking without just compensation of private property, foreseeable distress damages for losses sustained in violation of her civil rights, as well plaintiff seeks special damages, loss of earnings, and earning capacity, and coercive remedies, injunctive and declaratory relief.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of Due Process 42 U.S.C. § 1983; U.S. Const. Amend. V/XIV**

20

FIRST AMENDED COMPLAINT

1
2
3
4

43.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

5
6
7
8
9
10
11
12
13
14
15
16

44.     Defendant, by abandoning its duties under the law to ensure safe and secure living conditions inside and the immediate outside of plaintiff's under the living room and bedroom windows of plaintiff's rental apartment in the Tenderloin, defendant has denied plaintiff due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. The filthy sidewalk conditions under the windows of plaintiff is exacerbated profoundly by the threat of smoke inhalation from burning tents, lit inhalants, chemical, substance emissions,  urination,  feces and vomit and infection, have denied plaintiff her unimpeded liberty and use of her rental property, and have allowed conditions to fester that threaten plaintiff's health and life.

17
18
19
20

45.     Upon information and belief, this was done with deliberate intent and/or reckless disregard of Plaintiff's rights. Plaintiff seeks injunctive relief, declaratory relief, and monetary damages in the amount of $2.5 Million Dollars.

21

**SECOND CLAIM FOR RELIEF**

22

**Violation of Equal Protection 42 U.S.C. § 1983; U.S. Const. Amend. V/XIV**

23
24
25
26

46.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

27
28

**FIRST AMENDED COMPLAINT**

47.     Defendant, by enforcing the law in some areas and declining to enforce the law in others, has arbitrarily determined where homeless encampments may or may not be located and what communities should be affected, without following its own procedures in violation of both state and federal law. This has placed a disproportionate burden on Plaintiff Harrison, residing within the Tenderloin community, since such community is treated differently than other communities in regards to where homeless tents could be located.

48.     Upon information and belief, this was done with deliberate intent and/or reckless disregard of Plaintiff's rights. Plaintiff seeks injunctive relief, declaratory relief, and monetary damages in the amount of $2.5 Million Dollars.

### THIRD CLAIM FOR RELIEF

### Violation of Due Process Clause, State-Created Danger Doctrine

### 42 U.S.C. § 1983; U.S. Const. Amend. XIV

49.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

50.     By the acts and omissions described above, defendant has affirmatively created or increased the risk that Plaintiffs would be exposed to dangerous conditions, which places Plaintiff specifically at risk, whereas Plaintiff was harmed as a result.

51.     Defendant knew or should have known that its acts or omissions specifically endangered Plaintiff, and Defendant was deliberately indifferent thereto.

22

**FIRST AMENDED COMPLAINT**

52.     Upon information and belief, this was done with deliberate intent and/or reckless disregard of Plaintiff's rights. Plaintiff seeks injunctive relief, declaratory relief, and damages in the amount of $2.5 Million Dollars.

## FOURTH CLAIM FOR RELIEF

## Uncompensated Taking

## 42.U.S.C. § 1983; U.S. Const. Amend. V/XIV

53.     The Fifth Amendment mandates, in relevant part, that "private property [shall not] be taken for public use, without just compensation." The Fifth Amendment is applied to the states through the Fourteenth Amendment.  The actions by the City, as described in detail supra, have limited, damaged, and/or burdened the property owners so substantially that they rise to the level of a regulatory taking, yet no compensation has been provided.

54.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

55.     Upon information and belief, this was done with deliberate intent and/or reckless disregard of Plaintiffs' rights. Plaintiff seeks injunctive relief.

## FIFTH CLAIM FOR RELIEF

## Municipal Liability for Unconstitutional Custom or Policy

## 42 U.S.C. § 1983

23

**FIRST AMENDED COMPLAINT**

56.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

57.     Plaintiff has been informed, and believes and allege that, at all times herein mentioned, defendant and its agents, (Police) with deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions set forth above, all pursuant to policy, procedure, or customs held by the City.

58.     The actions and inactions of the City were known or should have been known to the policy makers responsible for that agency and occurred with deliberate indifference to the constitutional violations set forth above, and/or to the strong likelihood that constitutional rights would be violated as a result of its customs and/or policies.

59.     Upon information and belief, this was done with deliberate intent and/or reckless disregard of Plaintiff's rights. Plaintiff seeks injunctive relief, declaratory relief, and damages in the amount of $2.5 Million Dollars.

**SIXTH CLAIM FOR RELIEF**

**Violation of Title II of the Americans with Disabilities**

**Act 42 U.S.C. §§ 12131 et seq.**

60.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

**FIRST AMENDED COMPLAINT**

61.     The ADA provides that people with disabilities be afforded "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . .." Further, the ADA ensures that transportation facilities are constructed to a set of standards that ensures accessibility for the disabled. Sidewalks are the most common element of transportation infrastructure, yet if they are not accessible, they pose great challenges and dangers to anyone in a wheelchair or who has other mobility restrictions.

62.     Sidewalks are subject to the access requirements of Title II of the ADA and § 504 of the Rehabilitation Act.32 Accordingly, sidewalk width requirements ensure that sidewalks are accessible for use by wheelchair-bound individuals.

63.     The minimum width for an ADA-compliant sidewalk is 36 inches.33 "A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.

**64.**     Within the limits of plaintiff's living room and bedroom windows, the City is failing to uphold its obligations to maintain clear and accessible sidewalks and public rights-of-way for plaintiff who has physical impairments, and is a disabled resident, resulting in regular violations of the Americans with Disabilities Act. These ADA violations are obvious and known to the City both through its own inspections and various reports of blocked sidewalks in the Tenderloin due to tents and encampments through its own reporting mechanisms, such as 311. Defendant and its agents and employees have failed and continue to fail to

25

FIRST AMENDED COMPLAINT

provide reasonable accommodations for plaintiff who is disabled, and needs to use the public

sidewalks outside of her rental apartment complex, necessary to enter and exit through the

rear door.

65.     Defendant is obligated to operate the "service, program, or activity" "so

that . . ., when viewed in its entirety, it is readily accessible to and useable by individuals with

disabilities." Yet when "viewed in its entirety" public rights-of-way are not provided by

Defendant to be "readily accessible to and useable" by individuals bound to wheelchairs.

### SEVENTH CLAIM FOR RELIEF

### Violation of Section 504 of the Rehabilitation Act

### 29 U.S.C. §§ 794 et seq.

66.     Plaintiffs re-allege and incorporate herein by this reference each and every

allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully

herein.

67.     Section 504 of the Rehabilitation Act of 1973 provides in relevant part:

> [N]o otherwise qualified individual with a disability . . . shall, solely by
> reason of his or her disability, be excluded from the participation in, be
> denied the benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance . . .

68.     Plaintiff is otherwise qualified to participate in the services, programs, or

activities that are provided to individuals in the City. The City is a recipient of federal financial

assistance and therefore subject to Section 504. Upon information and belief, Defendant and

**FIRST AMENDED COMPLAINT**

its agents and employees have violated and continue to violate Section 504 of the Rehabilitation Act by excluding Plaintiff.

69.     Upon information and belief, said discrimination occurred with deliberate intent and/or reckless disregard of Plaintiff rights.  Plaintiff seeks injunctive relief, declaratory relief, and damages in the amount of $2.5 Million Dollars.

**EIGHTH CLAIM FOR RELIEF**

**Negligence Per Se**

**Evidence Code 669**

70.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

71.     Defendant, by and through its agents and employees, has the sole right and responsibility to control, maintain, and keep safe and clean the public and public-right-of-way areas in San Francisco, including parks, sidewalks, streets, and public buildings, and to make and enforce laws assuring the public health and safety thereof for its citizens and their guests. Among other things, Defendant has the duty to maintain these areas in a manner that does not unreasonably interfere with the free passage or use by Plaintiff, as well, the City is charged with abating  conditions that are harmful to health or indecent or offensive to the senses, that create a fire hazard, or that permit crime to occur unabated including the illegal sale of controlled substances.

**FIRST AMENDED COMPLAINT**

72.     As controlling law makes clear, "The public is entitled to the free and unobstructed use of the entire streets and sidewalks. . .." Indeed, municipalities "have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated."

73.     Defendant and its agents have breached their duty to Plaintiff, and Plaintiff has suffered as a result, as described more fully below. The bases of this claim for relief include the conduct, acts, and omissions of individual responsible City officials, based on the theory of respondeat superior.

74.     Plaintiff seeks monetary damages of $2.5 Million Dollars, and hereunder submits this claim also for equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity, pursuant to Cal. Gov't Code § 814.

## NINTH CLAIM FOR RELIEF

### Public Nuisance

### Cal. Civ. Code §§ 3479; 3490 et seq.

### Penal Code §§372; 373a et seq.

75.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

76.     California has defined nuisance as: [a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or

28

**FIRST AMENDED COMPLAINT**

offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

77.     That statute "is an expression of the Legislature's public policy against public nuisances, and it is plainly aimed at protecting the public from the hazards created by public nuisances."  In addition to health and safety hazards, "[a] reduction in property values caused by activities on a neighboring piece of land, and an assault on the senses by noise, dust, and odors, are just the kinds of harm that common law suits to abate a nuisance are designed to redress." A public nuisance is the substantial and unreasonable interference with a public right.

78.     As described above, the City, by its failure to maintain the public property under its control and to enforce the laws requiring the same, is perpetuating and facilitating a public nuisance.

79.     Plaintiff has experienced a substantial and unreasonable interference with the enjoyment of her property, whether that be a building owned or a room rented, and with their right of free passage and use; each has suffered and continues to be threatened with respect to plaintiff's health and welfare, by reason of the constant threat of smoke from burning tents, inhalants, disease and the experiencing of human waste, trash, tents, and encampments outside the windows of plaintiff's rental property and along the sidewalks and streets.

**FIRST AMENDED COMPLAINT**

80.     Plaintiff has been damaged in her own right, in a manner especially injurious to herself.  Plaintiff did not consent to Defendant's conduct. to Defendant's conduct.

## TENTH CLAIM FOR RELIEF

### Private Nuisance

### Nuisance Per se

### Cal. Civ. Code §§ 3479; 3501 et seq.

### Cal. Civ. Code §§ 3490 et seq.

81.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

82.     Plaintiff rents and occupy, or otherwise controls all of a portion of the apartment identified.  By Defendant's actions and inactions, each has created a condition or permitted a condition to exist that is harmful to the health, is indecent and offensive to the senses, obstructs the free passage and use of the sidewalks outside plaintiff's apartment, and permits unlawful sales of illicit narcotics, and constitutes a fire hazard, as described supra.

83.     Defendant's conduct has been and is intentional and unreasonable, or unintentional but negligent or reckless. Alternatively, the condition permitted to exist was the result of abnormally dangerous activity that substantially interfered with Plaintiff's use or enjoyment of her, or its land that would reasonably annoy or disturb an ordinary person. Plaintiff did not consent to Defendant's conduct; plaintiff was harmed; Defendant's conduct

FIRST AMENDED COMPLAINT

was a substantial factor in causing the harm; and the seriousness of the harm outweighs any public benefit of such conduct (which is none).

84.     Plaintiffs seek monetary damages hereunder and submit this claim for equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity, pursuant to Cal. Gov't Code § 814.

**ELEVENTH CLAIM FOR RELIEF**

**Violation of Mandatory Duty**

**Cal. Gov't Code § 815.6; Cal. Welf. & Inst. Code § 17000**

85.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

86..     Defendant City is liable under Cal. Gov't Code § 815.6 and common law negligence theory for violation of a statutorily mandated duty to provide medical care for the indigent. Cal. Welf. & Inst. Code § 17000 provides:

> Every county and every city and county shall relieve and support all
>
> incompetent, poor, indigent persons, and those incapacitated by age, disease,
>
> or accident, lawfully resident therein, when such
>
> persons are not supported and relieved by their relatives or friends, by their
>
> own means, or by state hospitals or other state or private institutions. 106. Cal.
>
> Welf. & Inst. Code § 10000 clarifies and defines the purpose of these obligations
>
> as follows:

**FIRST AMENDED COMPLAINT**

The purpose of this division is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely, with due regard for the preservation of family life, and without discrimination on account of ancestry, marital status, political affiliation, or any characteristic listed or defined in Section 11135 of the Government Code. That aid shall be so administered and services so provided, to the extent not in conflict with federal law, as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society.

87.    Sections 17000 and 10000 taken together mandate that "medical care be provided to indigents . . . promptly and humanely." This means that cities and counties must provide medical care to the poor "at a level which does not lead to unnecessary suffering or endanger life and health." The California Supreme Court has held that municipalities must provide "subsistence medical services." Cities and counties have an obligation to provide "'medically necessary' care, not just emergency care."46 Importantly, a city or county's obligation to provide medically necessary care must be fulfilled "without regard to its fiscal plight."47 "Medically necessary" for adults is defined by statute: "[A] service is 'medically necessary' or a 'medical necessity' when it is reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain."

**FIRST AMENDED COMPLAINT**

88.     In view of the above-described facts and circumstances, and the significant studies, statistics, and reports including those set forth supra, and other such evidence as may be provided, a person's status as an unsheltered homeless individual both causes and exacerbates physical and mental health problems, ultimately causing much higher rates of infection, disease, decay, pain, and death.

89.     Basic shelter is "medically necessary" because it is "reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain," and the City's failure to provide the same to its homeless population constitutes a breach of its duty under Cal. Welf. & Inst. Code §§ 17000 & 10000.  Tailfeather v. Board of Supervisors, 48 Cal. App. 4th 1223, 1245 (1996). 44 Id. at 1240. 45 Hunt v. Superior Court, 21 Cal. 4th 984, 1014 (1999) ("Section 10000) imposes a minimum standard of care—one requiring that subsistence medical.

90.     Plaintiff has been damaged by the City's failure to provide shelter, as described in detail supra.

91.     Plaintiffs seek monetary damages hereunder and submit this claim for equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity, pursuant to Cal. Gov't Code § 814.  County of Alameda v. State Bd. of Control, 14 Cal. App. 4th 1096, 1108 (1993) (quoting Bay Gen. Cmty. Hosp. v. County of San Diego, 156 Cal. App. 3d 944, 957 (1984)).  Cal. Welf. & Inst. Code § 14059.5(a).

## TWELFTH CLAIM FOR RELIEF

### Deprivation of the Guarantee of Safety and the Pursuit of Happiness

33

FIRST AMENDED COMPLAINT

**Cal. Const. art. I § 1**

92.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

93..    California Constitution, article I § 1 provides: All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

94.     The actions by the City have limited, damaged, and/or burdened Plaintiff's constitutionally guaranteed inalienable rights, including Plaintiff's rights to enjoy and defend her life and liberty; to acquire, possess, and protect her property; and to pursue and obtain safety, happiness, and privacy.

95..    Plaintiffs seeks monetary damages hereunder and submit this claim also for equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity, pursuant to Cal. Gov't Code § 814.   See generally Joseph R. Grodin, Rediscovering the State Constitutional Right to Happiness and Safety, 25 Hastings Const. L.Q. 1, 29 (1997) ("Either as an alternative or as an additional meaning, the happiness and safety clauses could be viewed as a declaration, and even a judicially enforceable one, that government has an affirmative obligation to provide at least the minimum conditions necessary for human happiness and safety. This would entail, arguably, the assurance of such things as minimal requirements for food, shelter, and medical care, and so far, as possible, a non-dangerous environment.").

FIRST AMENDED COMPLAINT

**THIRTEENTH CLAIM FOR RELIEF**

**Inverse Condemnation**

**Cal. Const. art. I § 19**

96.      Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

97..      California Constitution, article I § 19(a) provides in relevant part: Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner.

98.      The actions by the City have limited, damaged, and/or burdened the owner's property and/or business so substantially that they rise to the level of a regulatory taking, yet no compensation has been provided.

99.      Plaintiffs seeks monetary damages hereunder and submit this claim also equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity, pursuant to Cal. Gov't Code § 814.

**FOURTEENTH CLAIM FOR RELIEF**

**Violation of California Disabled Persons**

**Act Cal. Civ. Code §§ 54 et seq.**

35

**FIRST AMENDED COMPLAINT**

100.     Plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 33 of this Complaint as though set forth fully herein.

101.     California's Disabled Persons Act codifies requirements that ensure equal and full access to individuals with disabilities. That Act provides, in part: Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places

102.     Further, Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices . . . and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

103.     As detailed above, Plaintiff Harrison, is an individual with disabilities as defined by the Disabled Persons Act, and she is being denied full and equal access to places to which the general public is invited, including "free and full use" of public sidewalks, by the policies and practices of the City, including its failure regularly to maintain its sidewalks in a manner that permits wheelchair-bound individuals "full and free use" thereof.

**FIRST AMENDED COMPLAINT**

104.     Plaintiffs seeks monetary damages hereunder and submit this claim also equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity, pursuant to Cal. Gov't Code § 814.

## FIFTEENTH CLAIM FOR RELIEF

### Violation of Public Policy - Health & Hygiene

### CA Civ. Code § 3479

105.     The open-air place for urination and bowel movement with no sink or running water and soap. Providing a place to wash hands after use of the restroom is a common sanitation standard used in all fifty states. The open-air sidewalk, underneath plaintiffs' windows for toileting purposes, is a heavily visited area for unhoused sheltering in tents, and such unsanitary measures promoted the transmission of infections and diseases.

106.     in California, instruction on the importance of hand washing is part of school curriculum. Health Education Standards for California Public Schools: Kindergarten Through Grade Twelve, Standards 1.1.P and 7 .2. P. Moreover, the concept of hand washing - including after use of the restroom - is routinely taught in preschool in this country. For most homes, children are taught basic sanitation by their parents before they are old enough to enter such schools.

107.     Plaintiffs make this request for injunctive relief based upon their standing as taxpayers pursuant to CCP §526a.

**FIRST AMENDED COMPLAINT**

108.    Plaintiffs seeks monetary damages hereunder and submit this claim also

equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity,

pursuant to Cal.

Gov't Code § 814.

**ISSUE STATEMENTS:**

109.    Can Defendant  City and County of San Francisco discriminate on the basis of

Plaintiff's disability, or be deliberately indifferent to Plaintiff's disability?

110.    Can Defendant City and County of San Francisco violate plaintiff's civil rights, or

take and damage plaintiff's private property without just compensation pursuant to the Mayor's

COVID-19 Health Order?

### VII. DEMAND FOR JUDGMENT

**WHEREFORE, Plaintiffs pray for judgment against Defendant, as follows:**

1.  Injunctive/equitable relief in a manner to be determined by law; Cal. Civ. Code

    § 54(a). 51 Cal. Civ. Code § 54.1(a)(1).

2.  Damage Award of $2.5 Million Dollars

3.  Such other and further relief as this Court deems just and proper.

Dated:  May 17, 2021            By:    *Patrina Harrison*

38

**FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

39

**FIRST AMENDED COMPLAINT**